# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JASON J. A. REED

    *Plaintiff,*

    *v.*

CHAMBERSBURG AREA SCHOOL DISTRICT,
CHAMBERSBURG AREA SCHOOL DISTRICT FOUNDATION,
JOSEPH PADASAK,
    *-and-*
JILL MCCOLLUM,

    *Defendants.*

:
:
: Civil Action
:
: NO. *1: CV-13-644*
:
: Complaint
:
: JURY TRIAL DEMANDED
:
:
:
:

## COMPLAINT

F I L E D

MAR 1 1 2013

PER _____
HARRISBURG, PA   DEPUTY CLERK

### *Introduction & Nature of the Action*

This action is not related to any previously filed case in this Court.

Pursuant to the Federal Rules of Civil Procedure, Plaintiff, JASON J. A. REED ("Jason Reed" or "Plaintiff"), by and through his attorneys, POWELL LAW, PC and HYNUM LAW, PC, hereby files a complaint in the above-captioned matter against defendants, CHAMBERSBURG AREA SCHOOL DISTRICT ("Defendant" or "District"), CHAMBERSBURG AREA SCHOOL DISTRICT FOUNDATION ("Defendant" or "Foundation"), JOSEPH PADASAK ("Defendant Pakasak") and JILL MCCOLLUM ("Defendant McCollum") (collectively, "Defendants"), in this: civil rights action under the First and Fourteenth Amendments to the United States Constitution and 42 U.S.C §1983 brought to remedy violations of the constitutional rights of Jason Reed; federal trademark infringement, trade dress infringement, false designation of origin and unfair competition under the Trademark Act of 1946, as amended (the Lanham Act, 15 U.S.C. §§1051 *et seq.*), inclusive of Sections 32, 42 and 43(a) of the Lanham Act, 15 U.S.C. §§1114, 1125(a) and 1125(c); common law

trademark infringement and contributory trademark infringement under the Common Law of the Commonwealth of Pennsylvania; unfair competition under the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. §§201-1 – 201-9.2; and breach of contract for unjustified termination and tortuous interference under the Uniform Commercial Code, 13 Pa. C.S. §§1101 *et. seq.*, 33 Pa. C.S. §§ 1 - 3 and 42 Pa. C.S. §§1101 *et. seq.*, and Common Law of the Commonwealth of Pennsylvania, to remedy violations of the contractual rights of Jason Reed.   In support whereof, Plaintiff states and avers that the allegations made herein are premised upon information and belief that the same are likely to have evidentiary support after a reasonable opportunity for further investigation and discovery.

JURISDICTION AND VENUE

( 1.)    This action arises under the United States Constitution, particularly the First and Fourteenth Amendments, and, under federal law, particularly, 28 U.S.C. §§2201-02, 42 U.S.C. §§1983 and 1988; and arises under the Lanham Act, 15 U.S.C. §1051 *et seq.*

( 2.)    This Court possesses original jurisdiction over Plaintiff's claims by operation of 28 U.S.C. §§1331 and 1343.

( 3.)    This Court has authority to award the requested injunctive relief[1] under Rule 65 of the Federal Rules of Civil Procedure and 28 U.S.C. §1343(3).

( 4.)    This Court is authorized to award nominal damages under 28 U.S.C. §1343(4).

( 5.)    This Court is authorized to award attorney fees under 42 U.S.C. §1988.

( 6.)    This action arises under the Lanham Act, 15 U.S.C. §1051 *et seq.*

( 7.)    This Court has jurisdiction of this Lanham Act action under 15 U.S.C. §1121 and 28 U.S.C. §1338.

---

[1] A petition for injunctive relief will follow the filing of this complaint based on the subsequent facts, averments and allegation contained in this complaint.

( 8.)    This Court has ancillary jurisdiction of, *inter alia*, the common law and state claims herein under 28 U.S.C. §1367 for pendent state law claims.

( 9.)    Venue is proper in the United States District Court for the Middle District of Pennsylvania as the locality wherein these claims arose and all parties hereto reside, pursuant to 28 U.S.C. §1391.

PARTIES

*Plaintiff*

( 10.)    Plaintiff, JASON J. A. REED ("Jason Reed" or "Plaintiff"), is a United States citizen who resides at 450 North West Street, Carlisle, Cumberland County, Pennsylvania 17013.

( 11.)    Jason Reed is a native of Carlisle, Pennsylvania and an honors graduate of The Julliard School who left a successful career in the performing arts in New York to uphold his personal commitment to establish programming in his home community that provides young people with the opportunities he had—quality mentorship and the highest quality of performing arts technical skills.  Pursuant to that end, Jason Reed founded the 501(c)(3) organization ReachUSA, Inc. (the "REACH! Program" or "REACH!"), which has clocked over 7,500 community volunteer service hours since the year 2005.

( 12.)    Jason Reed has researched, created and developed numerous non-functional dance, performance elements, performance trade dress, staging and special arrangements as components of his REACH! Program, which distinguish his works and has secondary meaning associating Jason Reed as the source of such performances (collectively, the "Reed Trade Dress" and/or "Trade Dress" and/or "Trade Names").

*Defendants*

( 13.)    Defendant, CHAMBERSBURG AREA SCHOOL DISTRICT ("Defendant" or "District") is a second class public school district of the Commonwealth of Pennsylvania, organized pursuant to

PA Const. Art. III, § 14, SC 501, 502, 503, incorporated pursuant to the Pennsylvania School Code of 1949, with administrative offices at 435 Stanley Avenue, Chambersburg, Franklin County, Pennsylvania 17201.  District is inclusive of its employees, agents, affiliates and assigns.

( 14.)    A school district is a political subdivision.[2]

( 15.)    District is charged, inter alia, with the administration, operation and supervision of all District Board-approved school programs.

( 16.)    District, which is inclusive of its officers, agents, servants, employees, successors, representative and assigns, are charged with the formulation, adoption, implementation and enforcement of District policies, including the "Policy" (hereinafter defined) herein challenged.

( 17.)    District is responsible for the enactment, enforcement and existence of policies and practices related to District-sponsored activities that involve the use of District facilities and involve the collection of money for the benefit of District.

( 18.)    District is responsible for District representatives, including District employees who manage District-sponsored activities that involve the use of District facilities and involve the collection of money for the benefit of District.

( 19.)    District is also responsible for delegating to Defendant McCollum and Defendant Padasak final authority to supervise the "Afterschool Program" (hereinafter defined).

( 20.)    Defendant, CHAMBERSBURG AREA SCHOOL DISTRICT FOUNDATION, upon information and belief, was established in 1990 by District with a purpose of providing District students and teachers with grant funding for academic programs.  Foundation is inclusive of its employees, agents, affiliates and assigns.

( 21.)    Defendant, Joseph Padasak ("Defendant Padasak"), is an adult individual and a United States citizen.  During the time relevant hereto, Defendant Padasak was superintendent of the District.  Defendant Padasak is named in his official capacity to the extent that District does

[2] Pa. R.C.P. No. 76.

not assert immunity.  To the extent there was/is trademark infringement and United States constitutional violations, and/or District asserts Defendant Padasak acted outside his authority as superintendent or asserts immunity regarding Defendant Padasak's actions, this cause is against Defendant Padasak in his individual capacity.

( 22.)   Defendant, Jill McCollum ("Defendant McCollum"), is an adult individual and a United States citizen.  Upon information and belief, during the time relevant hereto, Defendant McCollum was employed as a teacher in the District and took on the role of program coordinator, or some similar role, of an afterschool program in the District.  Defendant McCollum is named in her capacity as an employee and teacher of District to the extent that District does not assert immunity.  To the extent there was/is trademark infringement and United States constitutional violations, and/or District asserts Defendant McCollum acted outside her authority as an afterschool program coordinator or asserts immunity regarding Defendant McCollum's actions, this cause is against Defendant McCollum in her individual capacity.

( 23.)   Defendants, upon information and belief, from the year 2007 to, at least, the year 2011, collaborated to finance, administer and operate an afterschool academic tutorial program at one or more schools in the District.

( 24.)   Jason Reed and Defendants are collectively referred to as "Parties."

## PLAINTIFF'S SERVICE MARKS

a. *Registered Marks*

( 25.)   This Complaint involves, the herein below listed marks federally registered by Jason Reed on the Principal Register of the United States Patent and Trademark Office ("USPTO") and the common law trade dress rights of Jason Reed used in conjunction with, among other services, artistic, dance and other aspects of his performing arts services as parts of the REACH! Program.

( 26.)   Registration on the USPTO Principal Register of a mark owned by a party to an action is admissible in evidence and is prima facie evidence of the validity of the registered mark and of the registration of the mark and the owner's exclusive right to use the registered mark.

( 27.)   A true and correct copy of a certificate of registration for each of the referenced federally registered marks is incorporated by reference herein (referred to hereinafter as the "Reed Marks"), collectively marked as "Exhibit 'A' " and made a part hereof, as follows:

| US Trademark Registration Number | US Registered Service Mark |
| --- | --- |
| 4173296 | REACH! |
| 4173297 | REACHUSA |
| 4173298 | C-BURG HYPE |
| 4173299 | LIL' HYPE |
| 4173300 | SWAGG |

b. *REACH! Program, Reed Marks, Trade Name and Trade Dress*

( 28.)   Some of the Reed Marks and Reed Trade Dress have been in use by Jason Reed as early as 1995 while a student at the Central Pennsylvania Youth Ballet, and Jason Reed has established legal rights through his federal registrations and  established common law rights since Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), protects from infringement of the unregistered trade dress of a service.

( 29.)   The Reed Trade Dress, which includes the image and overall appearance of a REACH! performance, is protectable in that there are identifiable characteristics connected with the Reed Trade Dress.  Elements of the Reed Trade Dress include effable and non-functional markers, specifically, *inter alia*, the formation of distinct body shapes, actions, movements, timing, performer spacing and placement, and includes distinct motions involving force, flow, repetition, contrast, transitions, sequencing and performer relationships that must be considered together for its total and distinct image and overall appearance.

( 30.)    Jason Reed's continuous, extensive and uniform use of the Reed Marks, Trade Names and Trade Dress has enabled consumers to associate the Reed Marks, Trade Names and Trade Dress with Jason Reed.  The Reed Marks and Trade Dress carry extensive goodwill and serve as a designator of origin of services emanating from, or sponsored or licensed by, Jason Reed.

( 31.)    The Reed Marks, Trade Names and Trade Dress are distinctive, according to the Lanham Act.

( 32.)    Jason Reed has a reputation for being proprietary regarding intellectual property to which he lays claim and taking measures to value, claim and protect his intellectual property.

( 33.)    Upon information and belief, none of the Defendants has filed for federal registration of any of the Reed Marks, Trade Names, Trade Dress or some such similar mark.

CONTRACT BETWEEN DISTRICT AND JASON REED

a. *Express Contract*

( 34.)    Upon information and belief, in the year 2006, District did not have an afterschool tutorial program.  That year, the Carlisle *Sentinel* newspaper reported on Jason Reed, the fact he is a graduate of The Julliard School in New York and his successful tutorial-mentorship-dance-exercise afterschool REACH! Program.  Defendant McCollum spotted a gem.  She telephoned Jason Reed at his home and stated she was intrigued by the *Sentinel* article and called to recruit him to establish a REACH! Chapter in the District (the "Offer").[3]  Jason Reed indicated his interest in locating a REACH! Chapter in the District, only if "you and the District agree 100% that REACH! is 100% my program and you will let me do the afterschool program my way."

( 35.)    Defendant McCollum agreed over the telephone that Jason Reed would be the director over every aspect of the REACH! Chapter and stated she had no idea where to start. Days later when Defendant McCollum and Jason Reed met, Defendant McCollum stated she

---

[3] By the time Defendants terminated Jason Reed, the Afterschool Program had at least 200 student participants, who experienced improved grade point averages, improved physical fitness and less stressful lives.

wanted a REACH! Chapter in the District and she would "make this happen ... since ... the [District] superintendent l-o-v-e-s me ... I will take care of setting it up ... Don't worry... the principal at Faust Junior High School will accept my recommendation ..." to implement the REACH! Program if she could identify tutors and workout the logistics such as what days and time slots.

( 36.)   Upon information and belief, and as will be learned through discovery, between November 2006 and April 2007, District's Board approved a formal relationship between District and Jason Reed by approving an afterschool program consisting of a District REACH! Chapter (the "Afterschool Program"), which involved transporting students, students staying after school and the use of District premises and teachers; District authorized or acquiesced to Defendant McCollum assisting in the administration and operation of the Afterschool Program; and at no time did Defendants make known to Jason Reed a need to negotiate the terms of the agreement between District and himself with someone other than Defendant McCollum.

( 37.)   There were not competitive or alternatively available afterschool programs considered by Defendants for several reasons.  Defendants understood the REACH! business model would attract substantial non-Foundation funding.  Upon information and belief, Defendant McCollum stated that the District had unsuccessfully tried to reduce the excessive racial tension and routine fist fighting between Hispanic and Caucasian students.  At a cost below market price, Jason Reed offered a program that addressed multiple concerns—academics, a social outlet and safe place for students after school, activities the students enjoyed, physical fitness activities, appeal to ethnic diverse students, professional performing arts training, in addition to instruction and mentoring by an intelligent and energetic African American male, born and reared in the region.

( 38.)   Jason Reed responded to the Offer with three conditions ("Counter-Offer").  First, he insisted on being the Director of the District REACH! Chapter since funding would rely upon his

intellectual property, credentials and the REACH! Program.  Defendant McCollum agreed to assist him by recruiting teachers as homework helpers and being his liaison between District and the REACH! Chapter.  Second, as Afterschool Program Director, he insisted on being involved in all significant decisions, meetings and financial matters since if something went wrong, he would ultimately be held liable.  His third condition was that he would retain ownership of all intellectual property associated with his REACH! Program and would license it to Defendants as he deemed appropriate and for only as long as Defendants and he worked together.

( 39.)   Defendants indeed accepted the Counter Offer ("Acceptance").   Thus, the Offer, Counter-Offer and Acceptance via word and course of performance demonstrate an agreement.

( 40.)   Consideration passed between the Parties.    In exchange for Jason Reed's REACH! Program, curriculum, services, intellectual property and instruction, Defendants accepted the Counter-Offer and paid Jason Reed and his instructors a total amount of $1,000.00 per month out of grant contracts that ranged from $30,000 annually to $55,000 annually.

( 41.)    Jason Reed complied with the specifications of the Summit Health contracts (the "Summit Health Contract(s)") that resulted from grant proposals (the "Summit Health Proposal(s)") and grant reports ("Summit Health Report(s)") jointly prepared by the Parties. The verbal agreement of the Parties, the Summit Health Contracts, the performance requirements and payments of the Summit Health Proposals, Summit Health Reports and Afterschool Program curriculum defined the relationship between the Parties.  Jason Reed conferred benefits on Defendants that, by the terms of the Summit Health Proposals, were not intended as a gratuity.

( 42.)    The Summit Health Proposals placed Jason Reed on notice that Defendants were acting in reliance on the agreement overarching the business relationship between the Parties.

( 43.)   Moreover, Defendants indicated in the 2010-2011 Summit Health Contract, attached hereto, marked as "Exhibit 'B'" and made a part hereof, that Defendants would abide by the terms of the Summit Health Proposal.

( 44.)   Defendants received prestige, goodwill and were able to secure extensive funding for the Afterschool Program.  Defendants' official website maintained a web page dedicated to Defendants' REACH! Chapter.  Flyers were sent to parents and guardians encouraging student participation.  Uniforms were designed, purchased and worn by Defendants' REACH! Chapter participants.  Student performances demonstrated the REACH! techniques.

( 45.)   District was not the only organization interested in the REACH! Program.  Between the years 2005 to 2009, there were nine REACH! Chapters.  Jason Reed established the first REACH! Chapter at the YMCA in Carlisle.  Swiftly thereafter, the REACH! Program became the regional afterschool performing arts "buzz" program since it provides professional performing arts instruction in an untapped market, and Jason Reed is vibrant and effervescent with strong people skills.  Citing the Chief Executive Director of the Central Pennsylvania Youth Ballet, "Jason, we are interested in you because you bring more to the table than curriculum."

b. *Implied Contract and/or Quantum Meruit*

( 46.)   The Afterschool Program benefited and built goodwill for District.  District was quick to convey to the public Defendant's association with Jason Reed, his credentials and gladly introduced Jason Reed as the founder and Director of the Afterschool Program.  The Afterschool Program's design, business model and characteristics are associated with Jason Reed.

( 47.)   Upon information and belief, since the year 2007, Defendants have used Jason Reed's hard work, credentials, notoriety, and REACH! Program as well as the Reed Marks and Trade Dress as the basis for securing approximately $300,000.00 in grant funding for an Afterschool Program that did not exist prior to Jason Reed bringing his REACH! Program to the District.

( 48.)   District never complained about Jason Reed's compliance or performance.

## DEFENDANTS' DISPARATE TREATMENT OF JASON REED

( 49.)    After leveraging Jason Reed's credentials and the REACH! Program to garner substantial grant funding for a program that reduced racial tension in the District, and extracting performing arts skills from Jason Reed's instruction, ironically, upon information and belief, Defendants established a policy (the "Policy") of inferior treatment of Jason Reed. Characteristics that initially attracted District (intelligent African American male leader and role model) began to agitate District representatives; talkative Black male "trying to run the show all the time," in the words of Defendant McCollum. Defendants began treating Jason Reed in a very racial stereo-typical and dismissive manner. Jason Reed did not respond to the racially disparate treatment until it became apparent there were substantial financial and legal consequences.

( 50.)    In the years 2006, 2007 and 2008, there were three Afterschool Program leaders (Defendant McCollum, Deborah Layman and Jason Reed); Jason Reed was the only Director. After the grant money started coming in from Summit Health, however, District imposed a downward status change on Jason Reed in terms of responsibilities and access to information.

( 51.)    Upon information and belief, during the years 2007, 2008, 2009, 2010 and 2011, Jason Reed was never permitted to view a single one of his completed timesheets; his timesheets were always completed by Defendant McCollum.    Initially, Jason Reed thought Defendant McCollum was being helpful and taking care of things for him; however, that proved not to be the case since Jason Reed was not permitted access when he requested.

( 52.)    Upon information and belief, District budgetary cuts made Jason Reed a convenient target of disparage treatment, even though he was paid under market for his services, notwithstanding Defendant McCollum's alleged statement. "…I pay him enough already…"

( 53.)    Upon information and belief, District's Program Coordinators, Defendant McCollum and Debra Lehman, paid themselves almost forty percent (40%) of all grant funding received

from the Summit Health Contract for the benefit of the students, in addition to being compensated for all out-of-pocket expenses and gas money to fuel their vehicles.

( 54.)     Upon information and belief, Jason Reed was paid a total of $75.00 per hour, which totaled to $1,000.00 per month maximum, which was pay for the services of Jason Reed, one (1) additional dance instructor and for use of the REACH! Program and its curriculum, the Reed Marks and Trade Dress.  Defendants paid no money for the teenage student dance instructors. Jason Reed was promised yet was never compensated for out-of-pocket expenses for the Afterschool Program or gas used by his vehicles to transport District students or extra insurance secured to fulfill the contract.

( 55.)     Upon information and belief, during the years 2007, 2008, 2009, 2010 and 2011, Jason Reed was never permitted access to Afterschool Program proposals, performance reports, budgets or expenditure reports, even though as Director, Jason Reed could be held legally responsible for each of these.  Initially, Jason Reed thought Defendant McCollum was being helpful and taking care of things for him; however, that proved not to be the case since Jason Reed was not permitted access when he requested.

( 56.)     Upon information and belief, Jason Reed was the only person accountable for the Afterschool Program who was not trusted to "handle" cash money.  During the years 2007, 2008, 2009, 2010 and 2011, Jason Reed was the only Afterschool Program leader never permitted access to Afterschool Program cash money collected from each student, even though as Director, Jason Reed could be held legally responsible for such cash.  (Even Jason Reed's Caucasian business partner was permitted to handle Afterschool Program cash.)   Initially, Jason Reed thought Defendant McCollum was being helpful and taking care of things for him; however, that proved not to be the case since Jason Reed was not permitted access when he requested.

( 57.)     Upon information and belief, there were three Afterschool Program leaders and Jason Reed was the only Afterschool Program leader expected to discipline the African-American

students and most of the Hispanic students.  Jason Reed was shocked, offended and in disbelief by Defendants' egregious racial discrimination and profiling yet continued to provide such services since Defendants has a practice of limiting their contact with African-American and Hispanic students and their parents.  If Jason Reed was unwilling to intervene, then Defendants' treatment of these students and parents would not equal Defendants' treatment of Caucasian students and parents.  This was racially offensive to minority students, parents and Jason Reed.

( 58.)   Upon information and belief, Jason Reed was the only Afterschool Program leader to whom checks were written for the purpose of  "cashing out" and paying in cash District employees and Afterschool Program expenses and entertainment.

( 59.)   Upon information and belief, there is no known "paper trail" documenting the overpayment checks District and/or Foundation made payable to Jason Reed.

( 60.)   Defendants' actions made Jason Reed financially responsibility for paying taxes on money he never received as income.

( 61.)   Upon information and belief, Defendants did not to comply with the Internal Revenue Code ("IRC"), which requires employers to accurately report income payments to employees.

( 62.)   Upon information and belief, when Jason Reed questioned Defendant McCollum regarding checks made payable to him from which he did not benefit.  Defendant McCollum indicated things had to be done that way "to keep things simple" and that "everything is okay."

( 63.)   Defendants built a narrative around their discriminatory Policy against Jason Reed. Defendants rebuked Jason Reed's requests for access to administrative documentation of the Afterschool Program and thereby limited his knowledge, critic, comments and revisions. Defendants gave various nonsensical reasons for denying access.

( 64.)   Upon information and belief, when Jason Reed requested financial records of the Afterschool Program, Defendants informed that records were not kept for over $250,000.00.

( 65.)   Defendants engaged in racial window dressing.  Jason Reed was not trusted with decision-making, financial information or cash.  Eventually, the "Afterschool Program Director" title was stripped and replaced with "Dance Director" to maintain a public aura of authority.

( 66.)   Defendants demonstrated racial stereotypical verbal expressions and conduct.  By way of example, Jason Reed asked on several occasions why he could not have the same access as others to Afterschool Program administrative records.   On one occasion, Defendant McCollum explained that the documents were "too complicated for you to understand" and on other occasions she stated, "Only I can figure this out" and "It's too much for you."  These are historically understood "Jim Crow" code terms for bringing into question one's intelligence and worthiness of pre-Civil War constitutional rights.  As an African American, Jason Reed is a member of a constitutionally protected class and Defendant McCollum's statements bear strong racial overtones.  Note that Jason Reed is an honors graduate of the Julliard School, is not intellectually disabled, is the founder of the Afterschool Program and was once proclaimed by Defendants to the public to be the Afterschool Program Director.

( 67.)   Upon information and belief, on a particular occasion when Defendant McCollum made disparaging comments regarding Jason Reed in a manner not made against any other Afterschool Program leader, certain parents rallied to his defense.   Defendant McCollum publicly referred to parents who questioned her disparage treatment of Jason Reed as "bitches", which served to horrify and/or bully the students of these parents, as noted in the hereto attached Affidavit of Jason Reed, marked as "Exhibit 'C'" and made a part hereof.   At a meeting days later, a District principal stated that a teacher has the liberty to refer to a parent as the teacher pleases.

( 68.)   Shortly thereafter, Defendants abruptly and unjustly terminated Jason Reed and, seemingly, terminated the Afterschool Program without explanation.

( 69.)   Upon information and belief, in February 2013, Jason Reed learned that the REACH! Program has been reinstated under a different name ("Reinstated Afterschool Program"), and Jason Reed's former responsibilities involving public relations, administration and instruction are charged to, at least, two individuals who have less relevant formal education and fewer relevant technical skills than Jason Reed yet who, in combination, are paid more per hour than Jason Reed was paid.

( 70.)   Upon information and belief, of the three Afterschool Program leaders, other than Jason Reed, no other Afterschool Program leader was harassed and bullied by Defendants.

( 71.)   Upon information and belief, Jason Reed was the only Afterschool Program leader not offered the opportunity to participate in the Reinstated Afterschool Program and, other than Jason Reed, no other Afterschool Program directorship has been turned over to a teenage student.

## SERVICE MARK /TRADE DRESS INFRINGEMENT AND UNFAIR COMPETITION

a. *REACH! Program Brand Strength and Goodwill*

( 72.)   The REACH! Program and Reed Marks have brand strength and goodwill, as evidenced by the facts.  Defendants sought out a relationship with Jason Reed.  Defendants utilized the goodwill of the REACH! Program and Reed Marks to secure approximately $250,000.00 in grant funding. Defendants pirated REACH! instructors to perform the Summit Health Contracts after terminating Jason Reed.  Importantly, since terminating Jason Reed, Defendants sought Jason Reed's participation in Defendants' programming on a non-paid basis.

( 73.)   At all times when there was no contract between the Parties, Defendants' use of the REACH! Program, Reed Marks, Trade Names and Trade Dress was unauthorized and constituted/constitutes trademark infringement, unfair competition and a breach of contract.

( 74.)   Moreover, upon information and belief, Defendants unconscionably continued using the REACH! Program, the Reed Marks and Trade Dress after Jason Reed was terminated.  Upon

information and belief, Defendant McCollum stated, "What will Jason do to me?  Get his attorney on me for using his little intellectual property? . . . Fat chance of that . . ."

( 75.)    After numerous requests over a two year period, Defendants continue to house on District premises approximately 150 articles of clothing bearing Reed Marks.

( 76.)    Upon information and belief, Defendants submitted grant applications in the years 2009 that refers to the Afterschool Program as the "C-BURG HYPE Dance Club".

( 77.)    Upon information and belief, Defendants submitted grant applications in the year 2010 that refers to the Afterschool Program as "C-BURG HYPE Dance Club".

( 78.)    Upon information and belief, Defendants submitted grant applications in the year 2011 that refers to the Afterschool Program as "C-BURG HYPE Dance Club".

( 79.)    Upon information and belief, Defendants submitted grant applications in the year 2012 that refers to the Afterschool Program as "C-BURG HYPE Dance Club"

( 80.)    "C-BURG HYPE" is a federally registered trademark owned by Jason Reed.

b. *Trademark Infringement and Unfair Competition*

( 81.)    Upon information and belief, Defendants used the REACH! Program, Reed Marks and Trade Dress after terminating Jason Reed.  Some of the public thought it was REACH! and others referred to Defendants' infringement by the moniker "Reach! without Jason".

( 82.)    Upon information and belief, as delineated in the Summit Health Proposals and Summit Health Contracts, the services of Defendants are substantially the same services created and previously provided by Jason Reed prior to Defendants' termination of Jason Reed.

( 83.)    Upon information and belief, weeks before Defendants terminated Jason Reed, Defendants began using the REACH! Program and Reed Trade Dress without involving or the knowledge of Jason Reed.  Defendants held secret practice sessions in anticipation of REACH!

performances scheduled to occur after Jason Reed was terminated.  The secret practice sessions also provided Defendants with opportunities to familiarize themselves with which students were able to teach the REACH! Program after the termination of Jason Reed.

( 84.)    Upon information and belief, Defendants authorized and/or organized at least two REACH! performances that Jason Reed did not authorize since the performances occurred after Jason Reed's contract was terminated.

( 85.)    After Defendants terminated Jason Reed, Defendants marketed and used the Reed Marks and Trade Dress, and intentionally copied the appearance of the REACH! Program.

( 86.) Upon information and belief, Defendants traded on Jason Reed's business reputation and passed off District's performance as that of District.  Defendants did not notify students, parents, Internet viewers and other members of the public that Jason Reed was terminated and no longer involved in the Afterschool Program.

( 87.)    Students, parents and other members of the public were confused by Afterschool Program's performances that were substantially similar to the performances of Jason Reed after Defendants terminated Jason Reed.

( 88.)    Defendants deliberately attempted to pass off the REACH! Program, Reed Marks and/or Trade Dress as its own.  Defendants convinced, and thus confused, funders of the Afterschool Program that the Reinstated Afterschool Program embodied the concept, components and characteristics of the REACH! Program without the cost of Jason Reed.

( 89.)    Defendants' use of the REACH! Program after Defendants, with no explanation to the public of what happened to Jason Reed, likely represented to the public that their use was approved by Jason Reed, which was not the case and/or that Defendants'use met the standard of the REACH! Program, which was also not the case.

( 90.)    Defendants' ongoing infringing use of the Reed Trade Dress indubitably prevents Mr. Reed from effectively competing in the market since the relevant customer—in particular,

Summit Health, Defendants, parents and students—are able to acquire a product confusingly similar to the REACH! Program from Defendants.

( 91.)    Upon information and belief, Defendant Padasak had constructive and actual knowledge of the events of the Afterschool Program relevant hereto, had the authority to prevent District's illegal use of the REACH! Program and Reed Marks, Trade Names and Trade Dress, and failed to reasonably act to prevent the illegal use.  Jason Reed has suffered, and continues to suffer, extensive damages from the service mark infringement.  Defendant Padasak continues to benefit from the illegal use in the form of curriculum, dance, exercises and representations to funders, parents, students and District taxpayers.

( 92.)    By seeking funding for afterschool programming, and by refusing to release to Jason Reed certain items displaying federally registered Reed Marks and Trade Names, which enabled Defendants to market the Reed Marks and Trade Names, Defendants purposefully availed themselves of the instrumentalities of commerce, and have and will continue to cause confusion.

c. _Defendants Induced and Contributed to Illegal Conduct by Teenagers_

( 93.)    Defendants intentionally induced, aided and abetted the pirated REACH! instructors' infringing activities.  After terminating Jason Reed, Defendants could have researched, identified and implemented an afterschool concept other than that of Jason Reed.

( 94.)    Upon information and belief, Defendants solicited and pirated teenage instructors of Jason Reed.  Days after terminating Jason Reed's contract, Defendants made secretive written and verbal solicitations to these teenagers to serve as Afterschool Program instructors.  The teenagers used the REACH! Program for Defendants' benefit since these pirated REACH! instructors had no other formal training and their value to Defendants' Afterschool Program is embedded in their REACH! training.  In good conscience, Jason Reed cannot bring action against the illegal acts of these young people since they are graduates of the District and were

unduly influenced to infringe upon the REACH! Program and Reed Trade Dress by their former teachers and authority figures.

( 95.)   The pirated REACH! instructors are too young to have an appreciation for their illegal intellectual property activities and Defendants are so concerned with obtaining money for District that they have failed to protect the health, safety and welfare of the teenagers.

d.  *Cease & Desist Notice by Jason Reed to Defendants*

( 96.)   Jason Reed's several communications with Defendants' Agent in the presence of others, and Defendants' Agent's acknowledgement of the Reed Marks and the Reed Trade Dress provided Defendants with actual notice of the Reed Marks, the Reed Trade Dress and Jason Reed's disapproval of Defendants' unlawful conduct.

( 97.)   The USPTO Trademark Registry is constructive notice of the Reed Marks.

( 98.)   Upon information and belief, Defendants have constructive and actual notice of Jason Reed's federal service mark registrations,.

( 99.)   In or about March of 2011, after being terminated, Jason Reed requested the return of clothing items displaying the Reed Marks.  It was not until November, after Jason Reed retained legal counsel, that Defendants returned some of the marked items.  In the year 2012, at least three subsequent requests were made to Defendants for the return of additional items bearing the Reed Marks.  In addition, Defendants had constructive and actual notice of Jason Reed's federal service mark registrations, to no avail.

(100.)  During the summer of 2012, one of Jason Reed's pirated instructors delivered a message to Defendants that Jason Reed does not approve of the unauthorized use of his REACH! Program yet he would consider a licensing arrangement if Defendants were willing to meet with Jason Reed.  Defendants, however, never responded to Jason Reed's request to negotiate.

BREACH OF CONTRACT

(101.)   Upon information and belief, between the years 2007 and 2011, Jason Reed, to his detriment and the benefit of Defendants:  provided data and professional technical assistance in the preparation of grant proposals; committed his time, effort and staff to Defendants; and permitted Defendants to use the REACH! Program and Reed Trade Dress and goodwill to assist Defendants in securing over $250,000.00 in grant funding based on grant proposals that contained the terms of the agreement between Defendants and Jason Reed.

(102.)   Jason Reed acted in reliance, to his detriment, on the bargained for obligations and representations Defendants made to him.  Defendants were aware that Jason Reed had performed a major production showcasing District's REACH! Chapter only weeks prior to Defendants terminating Jason Reed Defendants were aware that Defendants failed to contribute any money to help finance the January 29, 2011 production, which personally cost Jason Reed approximately $6.000.00 and resulted in Jason Reed incurring a person loss of approximately $2,000.00 in credit card debt plus interest.

(103.)   Defendants' termination of Jason Reed served to simultaneously revoke any license or authority Defendants had to use the REACH! Program, the Reed Marks and Trade Dress.

(104.)   At all times when there was no contract between the Parties, Defendants' use of the REACH! Program, Reed Marks, Trade Names or Trade Dress was unauthorized.

(105.)   Jason Reed did not receive notice or advance warning of his termination.

(106.)   Upon information and belief, within days after Jason Reed assisted in completing the 2011 Summit Health Proposal, Defendants terminated Jason Reed.

(107.)   Many parents did not know how to respond to a male African American instructor being abruptly terminated from a children's program wherein the majority of the children in the District are not African American.

(108.)   Upon information and belief, Defendants acknowledged the contract between the Parties in its e-mail terminating Jason Reed on or about March 10, 2011, attached hereto, marked as "Exhibit 'D' " and made a part hereof.  That same e-mail evidences Defendants' retention and housing of clothing items displaying the Reed Marks and Trade Dress. Jason Reed was unsuccessful and to date, Defendants continue to refuse to deliver to Jason Reed approximately 150 articles of clothing displaying the federally registered Reed Mark "C-BURG HYPE," as noted in the attached letter from Jason Reed's legal counsel to District attached hereto, marked as "Exhibit 'E' " and made a part hereof.

(109.)   District did not offer Jason Reed the opportunity to participate in the Reinstated Afterschool Program.

TORTIOUS INTERFERENCE

(110.)   Defendants tortuously interfered with Jason Reed's ability to secure additional work by requiring Jason Reed to commit to the time requirements of the Afterschool Program months in advance yet terminating him.

(111.)  REACH! is registered with the United States Internal Revenue Service as a 501(c)(3) non-profit entity wherein grant funding is critical to the entity's growth and development.  Grant applications that do not contain performance information regarding past grant involvement are not seriously considered for funding.  Defendants' past and continuing denial of access to information that informs regarding Jason Reed's grant involvement from the year 2006 through 2011 causes Jason Reed to suffer irreparable harm.

(112.)   Defendants tortuously interfered with Jason Reed's ability to secure grant funding for REACH! since Defendants refused to provide Jason Reed with access to the Summit Health Grant Reports, which summarize Jason Reed's performance under the Summit Health Contracts,

and which history is required on all significant grant programs, as documented in the attached grant applications marked as "Exhibit 'F'" and attached hereto and made a part hereof.

(113.)   Defendants tortuously interfered with Jason Reed's ability to secure grant funding for REACH! since, upon information and belief, Defendants refused to provide Jason Reed with access to the Summit Health Grant Reports, which summarize how money was spent on previous grants Jason Reed has participated, and which is a matter of public record, as documented in the attached documents marked as "Exhibit 'G'" and made a part hereof.

(114.)   Upon information and belief, days and weeks after the termination of Jason Reed, Jason Reed made additional attempts to obtain from Defendants copies of grant proposals and grant reports that reference, directly or indirectly, the services of REACH!, to no avail.

(115.)   Upon information and belief, when Jason Reed inquired of a Summit Health representative for copies of Summit Health Contracts, Summit Health Proposals and Summit Health Reports, the Summit Health representative indicated that Summit Health has all those documents, however, the documents were received from Defendants, are the property of Defendants and that Jason Reed should request the documents from Defendants.

(116.)   Defendants tortuously interfered with Jason Reed's performance of his obligations to entities other than Defendants by pirating REACH! Program instructors.

## COUNT ONE
## VIOLATION OF THE EQUAL PROTECTION CLAUSE OF THE
## FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION

(117.)   Jason Reed avers, adopts and incorporates by reference herein each and all of the allegations set forth in paragraphs 1 through 116 herein as though fully set forth at length in their entirety.

a. *Violation of the Equal Protection Clause of the Fourteenth Amendment*

(118.)   This claim is for violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, which requires the government to treat similarly situated individuals equally and prohibits racially disparate treatment.

(119.)   Defendants authorized the execution of acts that violated the rights of Jason Reed.

(120.)   Pursuant to Defendants Policy and racial practices, similarly situated individuals involved in the Afterschool Program other than Jason Reed were permitted to:  review timesheets maintained by Defendants; "handle" cash money; access Summit Health Proposals, Summit Health Reports and Summit Health Contracts; review Summit Health Proposals and Summit Health Reports, and retain their paid positions under the Summit Health Contracts.  Also, no other was expected to routinely address disciplinary matters involving minority students.

(121.)   Upon information and belief, pursuant to Defendants' Policy and racially disparate practices, Defendants did not require anyone other than Jason Reed to "cash out" checks in order to pay teachers in cash, buy food and entertainment, with no documentation of such payments.

(122.)   Upon information and belief, Defendants terminated Jason Reed without due process.

(123.)   Upon information and belief, under Defendants Policy and racial practices, no Afterschool Program leader other than Jason Reed was terminated without due process.

(124.)   Upon information and belief, all Afterschool Program leaders who desired to participate in the Reinstated Afterschool Program and were reasonably able, were offered work in the Reinstated Afterschool Program except for Jason Reed.

(125.)   Defendants' Policy provided unfettered discretion, and is therefore an unconstitutional prior restraint, utilized to exclude Jason Reed from access and as such, prohibited access on equal terms to its grant proposals and grant reports in violation of the Fourteenth Amendment.

(126.)   When government regulations, such as Defendants' Policy and practices challenged herein, infringe on fundamental rights, racial discriminatory intent is presumed.

(127.)   Defendants lack a rational or compelling state interest for such treatment.

(128.)   Defendants' Policy and practices are not narrowly tailored in that Defendants' restrictions on Jason Reed's equal protection is unrelated to any legitimate government interest.

(129.)   The Policy and discriminatory practices of Defendants violate Jason Reed's right to equal protection of the laws as guaranteed by the Fourteenth Amendment.

b.   *Intentional Violation of the Equal Protection Clause*

(130.)   Upon information and belief, Defendants' disparaging treatment of Jason Reed is with knowledge of the opposition Jason Reed expressed to the disparage treatment and with knowledge of the Fourteenth Amendment.   Thus, Defendants' acts were done, and continue, knowingly, intentionally, willfully and deliberately in order to violate Jason Reed's rights under the Equal Protection Clause of the Fourteenth Amendment.

( 131.) Defendants' payment practices violated the Fourteenth Amendment's equal protection clause since it disparagingly, knowingly and intentionally singled out Jason Reed for District's IRC violations, constituting disparaging treatment and federal tax burdens imposed on Jason Reed that were not imposed upon other Afterschool Program leaders or teachers.

(132.)   Defendants' violation of Jason Reed's rights under the Equal Protection Clause of the Fourteenth Amendment is intended to, has and will continue to, unjustly deprive Jason Reed of his civil rights under the United States Constitution.

(133.)   Defendant's Policy and practices as applied violate the Fourteenth Amendment's Equal Protection Clause since they treat Jason Reed differently than similarly situated individuals by denying Jason Reed equal access to the privileges and benefits of the Afterschool Program records on the same terms and conditions as similar Afterschool Program leaders without constitutional justification.

c. *Immediate and Irreparable Harm*

(134.)   Jason Reed is a citizen of the United States and an African American.  Defendants' violation of Jason Reed's rights under the Fourteenth Amendment has caused Jason Reed to suffer immediate and irreparable harm, and will cause further irreparable injury.

(135.)   Jason Reed would not otherwise have been deprived of his rights under the Equal Protection Clause of the Fourteenth Amendment but for Defendants' unlawful conduct.

(136.)   Upon information and belief, Defendants' unlawful acts will continue to cause injury and damages to Jason Reed in an amount that has yet to be determined.

d. *Relief Requested*

(137.)   This Count is for Defendants' illegal Policy and practices, which violate Jason Reed's rights guaranteed under the Equal Protection Clause of the Fourteenth Amendment.

WHEREFORE, Jason Reed seeks injunctive relief as set forth hereinafter in the Prayer for Relief and other relief provided for under the Equal Protection Clause of the Fourteenth Amendment as more fully set forth hereinafter in the Prayer for Relief.

## COUNT TWO
## VIOLATION OF THE DUE CLAUSE OF THE
## FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION

(138.)   Jason Reed avers, adopts and incorporates by reference herein each and all of the allegations set forth in paragraphs 1 through 137 herein as though fully set forth at length in their entirety.

a. *Violation of the Due Process Clause of the Fourteenth Amendment*

(139.)   This claim is for violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution, which restricts states from taking the property of a United States citizen without due process of law.

(140.)   Defendants authorized the execution of acts that violated the rights of Jason Reed.

(141.)   Defendants' Policy is unconstitutionally vague and arbitrary, in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

(142.)   Upon information and belief, pursuant to Defendants' Policy and racially disparate practices, Defendants did not write checks payable to other similarly situated individuals involved in the Afterschool Program who were required to "cash out" the checks and pay teachers in cash, as well as buy food and entertainment for others, with no documentation of such payments, and which required Jason Reed to pay taxes on money Defendants paid to others.

(143.)   Upon information and belief, under Defendants Policy and racial practices, no other Afterschool Program leader was terminated without due process and all Afterschool Program leaders were offered work in the Reinstated Afterschool Program except for Jason Reed.

(144.)   When government regulations, such as Defendants' Policy and racial practices challenged herein, infringe on fundamental rights, racial discriminatory intent is presumed.

(145.)   Defendants lack a rational or compelling state interest for treating Jason Reed as such.

(146.)   The Policy and discriminatory practices of Defendants violate Jason Reed's right to due process under the laws as guaranteed by the Fourteenth Amendment.

b. *Intentional Violation of the Due Process Clause*

(147.)   Upon information and belief, Defendants' due process deprivation of Jason Reed is with knowledge of the opposition Jason Reed expressed and with knowledge of the Fourteenth Amendment.   Thus, Defendants' acts were done, and continue, knowingly, intentionally, willfully and deliberately in order to violate Jason Reed's rights under the Due Process Clause of the Fourteenth Amendment.

(148.)   Defendants' violation of Jason Reed's rights under the Due Process Clause of the Fourteenth Amendment is intended to, has and will continue to, unjustly deprive Jason Reed of his civil rights under the United States Constitution.

c. *Immediate and Irreparable Harm*

(149.)   Jason Reed is a citizen of the United States and an African American.  Defendants' violation of Jason Reed's rights under the Fourteenth Amendment has caused Jason Reed to suffer immediate and irreparable harm, and will cause further irreparable injury.

(150.)   Jason Reed would not otherwise have been deprived of his rights under the Due Process Clause of the Fourteenth Amendment but for Defendants' unlawful conduct.

(151.)   Upon information and belief, Defendants' unlawful acts will continue to cause injury and damages to Jason Reed in an amount that has yet to be determined.

d. *Relief Requested*

(152.)   This Count is for Defendants' illegal Policy and practices that violate Jason Reed's rights guaranteed under the Due Process Clause of the Fourteenth Amendment.

WHEREFORE, Jason Reed seeks injunctive relief as set forth hereinafter in the Prayer for Relief and other relief provided for under the Due Process Clause of the Fourteenth Amendment to the United States Constitution as more fully set forth hereinafter in the Prayer for Relief.

**COUNT THREE**
**VIOLATION OF FREEDOM OF SPEECH**
**OF THE FIRST AMENDMENT TO THE UNITED STATES CONSTITUTION**

(153.)   Jason Reed avers, adopts and incorporates by reference herein each and all of the allegations set forth in paragraphs 1 through 152 herein as though fully set forth at length in their entirety.

a. *Violation of the Equal Protection Clause of the Fourteenth Amendment*

(154.)   This claim is for violation of the First Amendment to the United States Constitution, which requires the government to protect a citizen's individual liberty and prohibits the government from abridging the freedom of speech.

(155.)   Defendants authorized the execution of acts that violated the rights of Jason Reed.

(156.)   By restricting Jason Reed's access to public records and suppressing the content and viewpoint of Jason Reed's response to the Summit Health Proposals, Summit Health Reports, the Summit Health Contracts, the "cash" money expenditures of the Afterschool Program and Jason Reed's response to his timesheets maintained by Defendants, Defendants are violating Jason Reed's rights under the First Amendment.

(157.)   Defendants' Policy is an unconstitutional content-based and view-based restriction in a designated public forum that does not serve a compelling interest and is not narrowly tailored to achieve that interest.

(158.)   Defendants' Policy is an unconstitutional viewpoint-based restriction against Jason Reed's free speech in a designated public forum since the reviews, critic and comments Jason Reed desired to make while working for District would have been in response to public records of a public school district.  Hence, Defendants' Policy, which Defendants applied only to Jason Reed, is unreasonable in light of the purpose of the forum.

(159.)   Defendants' Policy provided unfettered discretion, and is therefore an unconstitutional prior restraint, that Defendants utilized to exclude Jason Reed from access and as such, prohibited access on equal terms to its Grant Proposals and Grant Reports in violation of the First Amendment, the Fourteenth Amendment and 42 U.S.C. §1983.

(160.)   Defendants lack a rational or compelling state interest for treating Jason Reed in such a disparate manner.

(161.)   When government regulations, such Defendants' Policy and racial practices challenged herein, infringe on fundamental rights, including the right of free speech, racial discriminatory intent is presumed.

(162.)   Defendants' Policy and practices are not narrowly tailored in that Defendants' restrictions on Jason Reed's speech is unrelated to any legitimate government interest.

(163.)   The Policy and discriminatory procedures of Defendants violate Jason Reed's right to equal protection of the laws as guaranteed by the First Amendment.

b. *Intentional Violation of the First Amendment*

(164.)   Upon information and belief, Defendants' suppression of Jason Reed's free speech is with knowledge of the opposition Jason Reed expressed and with knowledge of the First Amendment.   Thus, Defendants' acts were done, and continue, knowingly, intentionally, willfully and deliberately in order to violate Jason Reed's rights under the First Amendment.

(165.)   Defendants' violation of Jason Reed's rights under the First Amendment is intended to, has and will continue to, unjustly deprive Jason Reed of his federal civil rights.

c. *Immediate and Irreparable Harm*

(166.)   Jason Reed is a citizen of the United States and an African American.  Defendants' violation of Jason Reed's rights under the First Amendment has caused Jason Reed to suffer immediate and irreparable harm, and will cause further irreparable injury.

(167.)   Jason Reed would not otherwise have been deprived of his rights under the First Amendment but for Defendants' unlawful conduct.

(168.)   Upon information and belief, Defendants' unlawful acts will continue to cause injury and damages to Jason Reed in an amount that has yet to be determined.

d. *Relief Requested*

(169.)   This Count is for violation of Jason Reed's rights under the First Amendment.

(170.)   Defendants' illegal Policy and practices violate Jason Reed's right to free speech as guaranteed under the First Amendment.

WHEREFORE, Jason Reed seeks preliminary and permanent injunctive relief as set forth hereinafter in the Prayer for Relief and other relief provided for under the First Amendment as more fully set forth hereinafter in the Prayer for Relief.

## COUNT FOUR
## VIOLATION OF 42 U.S.C. § 1983 OF THE CIVIL RIGHTS ACT OF 1964

(171.)   Jason Reed avers, adopts and incorporates by reference herein each and all of the allegations set forth in paragraphs 1 through 170 herein as though fully set forth at length in their entirety.

a. *Violation of 42 U.S.C. § 1983*

(172.)  This claim is for violation of 42 U.S.C. § 1983, which establishes a cause of action for a person who has been deprived of rights secured by the United States Constitution by a person acting under color of state law.

(173.)   Defendants authorized the execution of acts that violated the rights of Jason Reed.

(174.)   Defendant's Policy and practices as applied violate the Equal Protection Clause and the Due Process Clause of the Fourteenth Amendment, and violate the First Amendment, and violate 42 U.S.C. §1983 since Defendants acts complained of herein were done under color of law without constitutional justification.

(175.)   When government regulations, such as Defendants' Policy and racial practices challenged herein, infringe on fundamental rights, racial discriminatory intent is presumed.

(176.)   Defendants lack a rational or compelling state interest for such treatment.

(177.)   Defendants' Policy and practices are not narrowly tailored and are unrelated to any legitimate government interest.

(178.)   The Policy and discriminatory procedures of Defendants violate Jason Reed's free speech and right to equal protection and due process of the laws as guaranteed by the First and Fourteenth Amendments to the United States Constitution, under color of law.

b. *Intentional Violation of the Equal Protection Clause*

(179.)   Upon information and belief, Defendants' 42 U.S.C. §1983 violations are with knowledge of the opposition expressed by Jason Reed expressed and with knowledge of 42

U.S.C. §1983. Thus, Defendants' acts were done, and continue, knowingly, intentionally, willfully and deliberately in order to violate Jason Reed's rights under color of law.

(180.) Defendants' violation of Jason Reed's rights under color of law is intended to, has and will continue to, unjustly deprive Jason Reed of his civil rights under the United States Constitution.

c. *Immediate and Irreparable Harm*

(181.) Jason Reed is a citizen of the United States and an African American. Defendants' violation of Jason Reed's rights under color of law has caused Jason Reed to suffer immediate and irreparable harm, and will cause further irreparable injury.

(182.) Jason Reed's deprivation of rights under color of law would not otherwise have occurred but for Defendants' unlawful conduct.

(183.) Upon information and belief, Defendants' unlawful acts will continue to cause injury and damages to Jason Reed in an amount that has yet to be determined.

d. *Relief Requested*

(184.) This Count is for Defendants' illegal Policy and practices, which violate Jason Reed's fundament rights as protected under 42 U.S.C. §1983.

WHEREFORE, Jason Reed seeks injunctive relief as set forth hereinafter in the Prayer for Relief and other relief provided for under 42 U.S.C. §1983 and as more fully set forth hereinafter in the Prayer for Relief.

## COUNT FIVE
## TRADEMARK INFRINGEMENT UNDER 15 U.S.C. §1114

(185.) Jason Reed avers, adopts and incorporates by reference herein each and all of the allegations set forth in paragraphs 1 through 184 herein as though fully set forth at length in their entirety.

a. *Trademark Infringement*

( 186.) This claim is for trademark infringement in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1114.

(187.) Defendants' unauthorized use of the REACH! Program and certain Reed Marks, Reed Trade Dress and colorable imitations thereof has created a likelihood of confusion, mistake or deception as to the source, origin, sponsorship, affiliation or approval of Defendants' services.

(188.) Jason Reed brings this cause of action consistent with the requirements of the Lanham Act in order to preserve his trademark rights as against others now and in the future.

b. *Intentional Infringement*

(189.) Upon information and belief, Defendants' use of the REACH! Program, Reed Marks, Reed Trade Dress and colorable imitations thereof is with constructive and actual knowledge of Jason Reed's federally registered trademarks and Jason Reed's common law rights in the Reed Marks and Reed Trade Dress. Thus, Defendants' acts were done, and continue, knowingly, intentionally, willfully and deliberately in order to create the likelihood of confusion, or to cause mistake, or to deceive.

(190.) Defendants' unauthorized use of certain Reed Marks and Reed Trade Dress: (i) is intended to and will unfairly divert to Defendants the benefit of the business reputation and goodwill symbolized by the Reed Marks and Reed Trade Dress, and (ii) has and will likely continue to confuse consumers to think that Defendants' performing arts services are authorized, sponsored or endorsed by, or associated and/or affiliated with Jason Reed.

c. *Immediate and Irreparable Harm*

(191.) Jason Reed has invested heavily in establishing goodwill in the REACH! Program, Reed Marks and Reed Trade Dress as well as establishing performing arts services goodwill.

(192.) Upon information and belief, Defendants' unauthorized use of the REACH! Program, Reed Marks, Trade Dress and colorable imitations thereof has caused Jason Reed to suffer

immediate and irreparable harm to its goodwill and reputation and, unless enjoined, will cause further irreparable injury.

(193.)   Upon information and belief, Defendants' unlawful acts of trademark infringement have caused Defendants to benefit and be unjustly enriched by funding that Defendants would not otherwise have acquired but for Defendants' unlawful conduct.

(194.)   Upon information and belief, unless restrained by this Court, Defendants will continue to: willfully and intentionally use confusingly similar, and unauthorized, marks and trade dress.

(195.)   Upon information and belief, Defendants' unlawful acts will continue to cause monetary injury and damages to Jason Reed in an amount that has yet to be determined.

d. *Relief Requested*

(196.)   This Count for infringement of the Reed Marks and the Reed Trade Dress, as registered by the USPTO, arises under Section 32 of the Lanham Act, 15 U.S.C. §1114.

(197.)   Defendants' unauthorized use of the Reed Marks and Reed Trade Dress infringes Jason Reed's exclusive rights in these marks and trade dress under Section 32 of the Lanham Act, 15 U.S.C. §1114.  Jason Reed seeks a preliminary injunction and a permanent injunction against Defendants as well as all other remedies available under the Lanham Act, including but not limited to, compensatory damages; treble damages; disgorgement of profits; and costs and attorney fees, pursuant to 15 U.S.C. §§1114, 1116, 1117, 1118 and 1125.

## COUNT SIX
## FALSE DESIGNATION OF ORIGIN AND UNFAIR COMPETITION
## UNDER 15 U.S.C §1125(a)

(198.)   Jason Reed avers, adopts and incorporates by reference herein each and all of the allegations set forth in paragraphs 1 through 197 herein as though fully set forth at length in their entirety.

a. *False Designation of Origin and Unfair Competition*

(199.)   This claim is for false designation of origin and unfair completion in violation of Section 43(a) of the Lanham Act, 15 U.S.C §1125(a).

(200.)   Defendants used unfair methods of competition and unfair or deceptive acts and practices in conducting the Afterschool Program by engaging deceptive conduct that created a likelihood of confusion and misunderstanding.

(201.)   Upon information and belief, Defendants' unauthorized use of certain Reed Marks, Reed Trade Dress and colorable imitations thereof is deceptive and provides Defendants with an unfair commercial advantage.

(202.)   Upon information and belief, Defendants' use of the Reed Marks, Reed Trade Dress and colorable imitations constitutes false designation of origin and unfair competition, since: (i) Defendants use the term "C-BURG HYPE" in a forum that caters to consumers interested in Jason Reed; (ii) Jason Reed owns the USPTO trademark registration for the term "C-BURG HYPE" and specifically licenses the use of the term "C-BURG HYPE"; (iii) Defendants' use of the term "C-BURG HYPE" for  services directed at Jason Reed's consumers is against the will of Jason Reed; (iv) Defendants' unauthorized use has and will continue to create a likelihood of confusion, and (v) Defendants' false designation of the origin of Defendants' services will unfairly divert to Defendants the benefit of the reputation and goodwill symbolized by the Reed Marks and Reed Trade Dress.

b. *Intentional Infringement*

(203.)   Upon information and belief, Defendants' use of Reed Marks, Reed Trade Dress and imitations thereof is with knowledge of Jason Reed's federally registered trademarks.  Thus, Defendants' acts were done, and continue, knowingly, willfully and deliberately with the intent of creating the likelihood of confusion, or to cause mistake, or to deceive.

(204.) Defendants' unauthorized use of certain Reed Marks and Reed Trade Dress: (i) is intended to and will unfairly divert to Defendants the benefit of the business reputation and goodwill symbolized by the Reed Marks and Reed Trade Dress, and (ii) will likely confuse consumers to think that Defendants' services are authorized, sponsored and endorsed by, or associated, and/or affiliated with Jason Reed.

c. *Immediate and Irreparable Harm*

(205.) Jason Reed has invested heavily in establishing goodwill in the Reed Marks and Trade Dress and the not-for-profit performing arts services of REACH!.

(206.) Upon information and belief, Defendants' unauthorized use of certain Reed Marks, Reed Trade Dress and colorable imitations thereof have caused Jason Reed to suffer immediate and irreparable harm to its goodwill and reputation and, unless enjoined, will cause further irreparable injury.

(207.) Upon information and belief, Defendants' unlawful acts of false designation of origin and unfair competition have caused Defendants to profit and be unjustly enriched by funding that Defendants would not otherwise have acquired but for Defendants' unlawful conduct.

(208.) Upon information and belief, Defendants' unlawful acts will continue to cause monetary injury and damages to Jason Reed in an amount that has yet to be determined.

d. *Relief Requested*

(209.) This Count for false designation of origin and unfair competition arises under Section 32 of the Lanham Act, 15 U.S.C. §1125(a).

(210.) Defendants' unauthorized use of the Reed Marks and Trade Dress violates Jason Reed's exclusive rights in these marks, trade name, and trade dress under Section 32 of the Lanham Act, 15 U.S.C.§1125(a). Jason Reed seeks a preliminary injunction and a permanent injunction against Defendants as well as all other remedies available under the Lanham Act,

including but not limited to, compensatory damages; treble damages; disgorgement of profits; and costs and attorney fees, pursuant to 15 U.S.C. §§1114, 1116, 1117, 1118 and 1125.

## COUNT SEVEN
## UNFAIR COMPETITION UNDER 73 P.S. §§201-1 – 201-9.2

(211.)   Plaintiffs aver, adopt and incorporate by reference herein each and all of the allegations set forth in paragraphs 1 through 210 herein as though fully set forth at length in their entirety.

a.  *Unfair Competition*

(212.)   This claim is for unfair competition in violation of 73 P.S. §§201-1 – 201-9.2.

(213.)   Upon information and belief, Defendants' unauthorized use of the REACH! Program, Reed Marks and Trade Dress and colorable imitations thereof constitutes unfair methods of competition and deceptive commercial practices in violation of 73 P.S. §§201-1 – 201-9.2.

b. *Intentional Unfair Competition*

(214.)   Upon information and belief, Defendants' use of the REACH! Program, Reed Marks and Trade Dress and imitations thereof is with knowledge of Jason Reed's federal and common law rights.   Thus, Defendants' acts were done, and continue, knowingly, willfully and deliberately with the intent of creating the likelihood of confusion, or to cause mistake or misunderstanding, or to deceive.

(215.)   Upon information and belief, Defendants' unauthorized use of the REACH! Program, Reed Marks and Trade Dress is intended to confuse consumers and unfairly divert to Defendants the benefit of the business reputation and goodwill symbolized by the REACH! Program, Reed Marks and Trade Dress.

c. *Immediate and Irreparable Harm*

(216.)   Jason Reed has invested heavily in establishing goodwill in the REACH! Program, Reed Marks and Trade Dress as well as establishing goodwill in performing arts services.

(217.)   Upon information and belief, Defendants acts of unfair competition have caused Jason Reed to suffer immediate and irreparable harm to its goodwill and reputation and, unless enjoined, will cause further irreparable injury.

(218.)   Upon information and belief, Defendants' acts of intentional unfair competition have caused Defendants to profit and be unjustly enriched by services that Defendants would not otherwise have had but for Defendants' unlawful conduct.

(219.)   Upon information and belief, Defendants' unlawful acts have caused and will continue to cause monetary injury and damages to Jason Reed in an amount that has yet to be determined.

(220.)   Defendants' unauthorized use of the REACH! Program, Reed Marks, Trade Dress and colorable imitations thereof will likely continue unless enjoined by this Court.

d.   *Relief Requested*

(221.)   This Count for unfair competition arises under 73 P.S. §§201-1 – 201-9.2.

(222.)   Defendants' unauthorized use of the REACH! Program, Reed Marks and Trade Dress violates Jason Reed's exclusive common law rights in these marks, trade name, and trade dress. Jason Reed seeks a preliminary and permanent injunction against Defendants as well as all other remedies available, including but not limited to, compensatory damages; disgorgement of profits; and costs and attorney's fees, pursuant to 73 P.S. §§201-1 – 201-9.2.

## COUNT EIGHT
## COMMON LAW TRADEMARK INFRINGEMENT

(223.)   Jason Reed avers, adopts and incorporates by reference herein each and all of the allegations set forth in paragraphs 1 through 222 herein as though fully set forth at length in their entirety.

a.  *Trademark Infringement*

(224.)   This claim is for trademark infringement and deceptive trade practices in violation of the common law of the Commonwealth of Pennsylvania.

(225.)   Upon information and belief, Defendants' unauthorized use of the REACH! Program, its Reed Trade Dress and colorable imitations thereof constitutes common law trademark infringement, passing off and deceptive trade practices in violation of common law.

b.  *Intentional Infringement*

(226.)   Upon information and belief, Defendants' unauthorized use of the REACH! Program and Reed Marks, Trade Dress and imitations thereof is with knowledge of the Jason Reed's federally registered trademarks and common law rights.  Thus, Defendants' acts were done, and continue, knowingly, willfully and deliberately with the intent of creating the likelihood of confusion, or to cause mistake, or to deceive.

(227.)   Upon information and belief, Defendants' unauthorized use of the REACH! Program, Reed Marks, Trade Dress and imitations thereof is intended to confuse consumers and unfairly divert to Defendants the benefit of the reputation and goodwill symbolized by the REACH! Program, Reed Marks and Trade Dress.

c.  *Immediate and Irreparable Harm*

(228.)   Jason Reed has invested heavily in establishing goodwill in the REACH! Program, the Reed Marks and Trade Dress as well as establishing professional services goodwill.

(229.)   Upon information and belief, Defendants acts of common law trademark infringement have caused Jason Reed to suffer immediate and irreparable harm to his goodwill and reputation and, unless enjoined, will cause further irreparable injury.

(230.)   Upon information and belief, Defendants' acts of common law trademark infringement have caused Defendants to benefit and be unjustly enriched by grant funding that Defendants would not otherwise have secured but for Defendants' unlawful conduct.

(231.) Upon information and belief, Defendants' unlawful acts have caused and will continue to cause monetary injury and damages to Jason Reed in an amount that has yet to be determined.

(232.) Defendants' unauthorized use of the REACH! Program, Reed Marks, Trade Dress and colorable imitations thereof will likely continue unless enjoined by this Court.

d. *Relief Requested*

(233.) This Count for trademark infringement arises under the common law.

(234.) Defendants' unauthorized use of the REACH! Program, Reed Marks and Trade Dress violates Jason Reed's exclusive common law rights in these marks, trade name, and trade dress. Jason Reed seeks a preliminary and permanent injunction against Defendants as well as all other remedies available, including but not limited to, compensatory damages; disgorgement of profits; and costs and attorney fees, pursuant to the common law.


## COUNT NINE
## COMMON LAW CONTRIBUTORY TRADEMARK INFRINGEMENT

(235.) Jason Reed avers, adopts and incorporates by reference herein each and all of the allegations set forth in paragraphs 1 through 234 herein as though fully set forth at length in their entirety.

a. *Trademark Infringement*

(236.) This claim is for contributory trademark infringement in violation of the common law of the Commonwealth of Pennsylvania.

(237.) Upon information and belief, after Defendants terminated Jason Reed, Defendants' induced teenage student instructors of the REACH! Program to instruct dance classes as a part of the Afterschool Program or some other program in order for Defendants to fulfill its obligations under one or more grant proposals/contracts.

(238.)   Upon information and belief, former REACH! Program instructors did instruct dance classes for Defendants and Defendants had control over the services provided by the former REACH! Program instructors.

(239.)   Upon information and belief, during, at least, the years of 2011 and 2012, former REACH! Program instructors infringed upon the REACH! Program and the Reed Trade Dress.

b. *Intentional Infringement*

(240.)   Upon information and belief, Defendants' contributory infringement of the REACH! Program and Reed Marks, Trade Dress and imitations thereof is with knowledge of the Jason Reed's federally registered trademarks and common law rights.   Thus, Defendants' acts were done, and continue, knowingly, willfully and deliberately with the intent of creating the likelihood of confusion, or to cause mistake, or to deceive.

(241.)   Upon information and belief, Defendants' contributory infringement of the REACH! Program, Reed Marks, Trade Dress and imitations thereof is intended to confuse consumers and unfairly divert to Defendants the benefit of the reputation and goodwill symbolized by the REACH! Program, Reed Marks and Trade Dress.

c. *Immediate and Irreparable Harm*

(242.)   Jason Reed has invested heavily in establishing goodwill in the REACH! Program, the Reed Marks and Trade Dress as well as establishing professional services goodwill.

(243.)   Upon information and belief, Defendants acts of common law trademark infringement have caused Jason Reed to suffer immediate and irreparable harm to his goodwill and reputation and, unless enjoined, will cause further irreparable injury.

(244.)   Upon information and belief, Defendants' acts of common law trademark infringement have caused Defendants to benefit and be unjustly enriched by grant funding that Defendants would not otherwise have secured but for Defendants' unlawful conduct.

(245.)   Upon information and belief, Defendants' unlawful acts have caused and will continue to cause monetary injury and damages to Jason Reed in an amount that has yet to be determined.

(246.)   Defendants' unauthorized use of the REACH! Program, Reed Marks, Trade Dress and colorable imitations thereof will likely continue unless enjoined by this Court.

d. *Relief Requested*

(247.)   This Count for trademark infringement arises under the common law.

(248.)   Defendants' unauthorized use of the REACH! Program, Reed Marks and Trade Dress violates Jason Reed's exclusive common law rights in these marks, trade name, and trade dress. Jason Reed seeks a preliminary and permanent injunction against Defendants as well as all other remedies available, including but not limited to, compensatory damages; disgorgement of profits; and costs and attorney fees, pursuant to the common law.

**COUNT TEN**
**BREACH OF CONTRACT**

(249.)   Jason Reed avers, adopts and incorporates by reference herein each and all of the allegations set forth in paragraphs 1 through 248 herein as though fully set forth at length in their entirety.

a. *Breach of Contract*

(250.)   This Count is for breach of contract in violation of 13 Pa. C.S. §§ 1101 *et seq.*.

(251.)   Upon information and belief, Defendants' unjustified treatment and termination of Jason Reed constitute breach of contract in violation of 13 Pa. C.S. §§ 1101 *et seq.*

a. *Intentional Breach of Contract*

(252.)   Upon information and belief, there is clear evidence that there was a meeting of the minds between the Parties that led to actions.  Defendants' Board approved the REACH!

Chapter, reserved physical space for REACH! Chapter meetings and gatherings and arranged for District teachers to serve as homework helpers.  Jason Reed scheduled time to meet with administrators, recruit students, operate the Afterschool Program, solicit grant funding for the Afterschool Program and assist in preparing grant proposals.

(253.)   The scope, nature and extent of the contractual obligations of the Parties were further crystallized in the Summit Health Contracts, the Summit Health Proposals, the Summit Health Reports, the Afterschool Program curriculum and the course of performance between the Parties over a five (5) year period.

(254.)   Defendants' termination of Jason Reed was an unjustified unilateral rescission of the agreement between the Parties that resulted in foreseeable damages.

c. *Immediate and Irreparable Harm Ensued*

(255.)   The events involved in this cause of action occurred in Franklin County, and ironically, Franklin County's namesake, Benjamin Franklin, said, "Glass, china and reputation are easily cracked and never mended well."  To the extent that Defendants' services are viewed as being less than satisfactory to consumers, Jason Reed's business reputation and goodwill and the reputation and goodwill of the REACH! Program, Reed Marks and Trade Dress are being and will be tarnished and injured.

(256.)   Defendants' actions damaged Jason Reed's reputation and caused him to suffer irreparable harm since many parents did not know how to respond to a male African American instructor being abruptly terminated from a children's program in a school district where the majority of the children are not African American.

(257.)   Jason Reed did not receive notice or advance warning of the termination and thus, was not able to obviate the damages caused by Defendants' breach of contract.

(258.) Jason Reed detrimentally relied on the income from the Summit Health Contracts.  If the 2010-2011 and the 2011-2012 Summit Health Contracts had been carried through without

breach of contract or other interruption, Jason Reed would have earned, at least, an additional $17,000.00.

d. *Relief Requested*

(259.)   Defendants' unjust termination of Jason Reed is a breach of contract arising under 13 Pa. C.S. §§ 1101 *et. seq.*. and Jason Reed seeks compensatory damages; disgorgement of profits; and costs and attorney fees, as well as all other remedies available under the Pennsylvania Uniform Commercial Code.


## COUNT ELEVEN
## EQUITABLE RELIEF

( 260.)   Jason Reed avers, adopts and incorporates by reference herein each and all of the allegations set forth in paragraphs 1 through 259 herein as though fully set forth at length in their entirety.

a.   *Quantum MerUnjust Enrichment*

(261.)   This claim is for unjust enrichment under the Common Law of the Commonwealth of Pennsylvania.

(262.)   Defendants benefited from their association with the REACH! Program, the Reed Marks, Trade Dress and Jason Reed's detrimental reliance and efforts to advance the Afterschool Program.

(263.)   The Parties demonstrated a course of performance, a pattern and practice.  Annually, the Parties would jointly complete a Summit Health Proposal.  Grants that they committed to together and relied upon the REACH! Program concept were jointly performed by the Parties

b. *Intentional Trademark Dilution*

(264.)   Upon information and belief, Defendants' acts of trademark dilution have been done willfully, deliberately and intentionally.

c. *Immediate and Irreparable Harm*

(265.)   Upon information and belief, Defendants' acts of trademark dilution have caused Defendants to profit and be unjustly enriched by sales that Defendants would not otherwise have made but for their unlawful conduct.

(266.)   Jason Reed has invested heavily in establishing goodwill in its housing and lodging services, and Defendants acts described herein above have caused injury and damages to Jason Reed, have caused and will continue to cause immediate and irreparable harm to Jason Reed, whereby Jason Reed has incurred and will continue to incur monetary damages in an amount that has yet to be determined.

(267.)   Defendants' unauthorized use of the REACH! Program, the Reed Marks and Trade Dress and colorable imitations thereof will likely continue unless enjoined by this Court.

d. *Relief Requested*

(268.)   This Count for trademark dilution arises under 54 Pa.C.S. §1124.

(269.)   Defendants' unauthorized use of the REACH! Program, Reed Marks and Trade Dress violates Jason Reed's exclusive rights in these marks, trade name, and trade dress under 54 Pa.C.S. §1124.  Jason Reed seeks a preliminary and permanent injunction against Defendants as well as all other remedies available under the laws of the Commonwealth of Pennsylvania, including but not limited to, compensatory damages; treble damages; disgorgement of profits; and costs and attorney fees.

### COUNT TWELVE
### TORTIOUS INTERFERENCE WITH CONTRACT

(270.)   Jason Reed avers, adopts and incorporates by reference herein each and all of the allegations set forth in paragraphs 1 through 269 herein as though fully set forth at length in their entirety.

a.  *Tortious Interference with Contract*

(271.)  This claim is for tortuous interference with contract, pursuant to the Common Law of the Commonwealth of Pennsylvania.

(272.)  Defendants' actions tortuously interfered with Jason Reed's ability to fulfill contracts and to secure additional contracts.

b. *Intentional Trademark Dilution*

(273.)  Upon information and belief, Defendants' understood that its acts were not constructive, were not done in good faith, and were done willfully, deliberately and intentionally.

c. *Immediate and Irreparable Harm*

(274.)  Upon information and belief, Defendants' acts  have caused Jason Reed contractual harm, which would not otherwise have occurred but for their unlawful conduct.

d. *Relief Requested*

(275.)  This Count for tortuous interference of contract and Jason Reed seeks the remedies available under the laws of the Commonwealth of Pennsylvania, including but not limited to, compensatory damages; treble damages; disgorgement of profits; and costs and attorney fees.


**PRAYER FOR  INJUNCTIVE RELIEF, DAMAGES AND OTHER RELIEF**

WHEREFORE, the premises stated, Jason Reed, by and through his undersigned counsel, respectfully prays for judgment in his favor and against Defendants, as follows:

A. That this Honorable Court issue a Preliminary and Permanent Injunction compelling Defendants, their officers, agents, servants, employees successors, representatives and assigns, and all others acting in active concert and privity with them, to immediately suspend the Policy and racially discriminatory practices as applied against Jason Reed, and thereby require Defendants to immediately provide Jason Reed with corrected United States Internal Revenue Code documents which may be inclusive of the years 2007, 2008, 2009 and 2010;

B. That this Honorable Court issue a Preliminary and Permanent Injunction compelling Defendants, their officers, agents, servants, employees successors, representatives and assigns, and all others acting in active concert and privity with them, to immediately suspend the Policy and racially discriminatory practices as applied against Jason

Reed, and thereby require Defendants to provide Jason Reed with immediate access to the Summit Health Proposals, the Summit Health Reports, the Summit Health Contracts, the Afterschool Program timesheets of Jason Reed for the years 2007, 2008, 2009, 2010 and 2011, and thereafter, a permanent injunction enjoining Defendants, inclusive of each defendant herein, and their officers, agents, servants, employees, successors, representatives and assigns, and all others acting in active concert and privity with them from restraining Jason Reed's access to other financial records of the Afterschool Program during 2007, 2008, 2009, 2010, 2011 and 2012;

C. That this Honorable Court render a Declaratory Judgment declaring unconstitutional Defendants' Policy as applied to Jason Reed;

D. That this Honorable Court render a Declaratory Judgment declaring the Policy as applied to Jason Reed unconstitutionally vague, without determinate standards and permissive of administrative discretion that exceeds the bounds permitted by the First Amendment;

E. That this Honorable Court render a Declaratory Judgment declaring the Policy as applied to Jason Reed unconstitutionally void of equal protection and due process, without determinate standards and permissive of administrative discretion that exceeds the bounds permitted by the Fourteenth Amendment;

F. That this Honorable Court adjudge, decree and declare the rights and other legal relations of the Parties to the subject matter here in controversy, in order that such declarations shall have the force and effect of a final judgment;

G. That this Honorable Court immediately enjoin Defendants from using the REACH! Program, Reed Marks, Reed Trade Dress or colorable imitation or distinctive components thereof;

H. That this Honorable Court order Defendants to immediately return to Jason Reed the approximate 150 shirts/jerseys that have the "C-BURG HYPE" Reed Mark;

I. That Defendants, inclusive of each defendant herein, account to Jason Reed for their profits and the actual damages suffered by Jason Reed as a result of Defendants' acts of trademark infringement, false designation of origin and unfair competition, together with interest and costs, and that such damages be trebled because of the willful acts described above, which acts were committed in knowing disregard of Jason Reed's rights;

J. That Defendants: (i) immediately and prominently post at their official Internet website the Summit Health Proposals, the Summit Health Reports and Summit Health Contracts for, at least, the years 2007, 2008, 2009, 2010, 2011 and 2012 in order to "clear" Jason Reed's reputation with parents, students and the public regarding Jason Reed's involvement in the Afterschool Program, and that such documents be posted at District's official Internet website for at least three (3) years;

K. That Defendants, inclusive of each defendant herein, account to Jason Reed for their profits and the actual damages suffered by Jason Reed as a result of Defendants' acts

of breach of contract and/or quantum meruit, together with interest and costs, and that such damages be trebled because of the willful acts described above, which acts were committed in knowing disregard of Jason Reed's rights;

L.   That this Honorable Court award damages for the violation of Jason Reed's constitutional rights;

M.   That this Honorable Court award Jason Reed's costs and expenses, including a reasonable award of attorney fees, in accordance with 42 U.S.C. §1988;

N.   That Defendants pay compensatory damages and treble damages to Jason Reed;

O.   That Defendants pay Jason Reed's attorney fees, together with the costs of this suit;

P.   That this Honorable Court issue the requested injunctive relief without a condition of bond or other security being required of Jason Reed;

Q.   That this Honorable Court retain jurisdiction of this matter for the purpose of enforcing any Orders; and

R.   That this Honorable Court grant such other and further relief as the Court deems just and equitable.


Dated this 11th day of March, 2013.


                              Respectfully submitted,

                              *Mary H Powell*

                              Mary H Powell, Trial Attorney (PaID#87862)
                              POWELL LAW, PC
                              P. O. Box 61485
                              Harrisburg, PA 17106-1485
                              Tel:  (717) 236-6666
                              Fax:  (717) 230-8855
                              Email:  tyapowell@gmail.com

                              Michael Hynum (PaID #85692)
                              HYNUM LAW, PC
                              2608 N. Third Street
                              Harrisburg, PA 1710
                              Tel (717) 774-1357

                              *Attorneys for Plaintiff,*
                              JASON J. A. REED

## VERIFICATION

I, Jason J. A. Reed, a citizen of the United States and a resident of the Commonwealth of Pennsylvania, have read the foregoing Verified Complaint  and declare under the penalty of perjury, pursuant to 28 U.S.C § 1746, that the foregoing is true and correct.

Executed this _____ 7th _____ day of March 2013.


_____
Jason J. A. Reed