**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JASON J. REED,** | : | |
| **Plaintiff** | : | **No. 1:13-cv-644** |
| | : | |
| **v.** | : | |
| | : | |
| **CHAMBERSBURG AREA SCHOOL** | : | |
| **DISTRICT, et al.,** | : | **(Chief Judge Kane)** |
| **Defendants** | : | |

**MEMORANDUM**

On March 11, 2013, Plaintiff Jason Reed initiated this action by filing a complaint

against Defendants Chambersburg Area School District, Chambersburg Area School District

Foundation, Joseph Padasak, and Jill McCollum, asserting a number of claims arising out of the

deterioration of the relationship between Plaintiff, his after-school dance program, and the school

district.  (Doc. No. 1.)  On April 8, 2013, Plaintiff filed an amended complaint.  (Doc. No. 10.)

Presently before the Court are two motions to dismiss Plaintiff's amended complaint: one by

Defendants Chambersburg Area School District, Jill McCollum, and Joseph Padasak (Doc. No.

25); and one by Defendant Chambersburg Area School District Foundation (Doc. No. 27).  For

the reasons that follow, the Court will grant in part and deny in part Defendants' motions.

## I.      BACKGROUND

According to his 297-paragraph amended complaint, in 2005, Plaintiff established an

after-school dance program to provide young people in his home town of Carlisle, Pennsylvania

with mentorship and dance instruction.[1]  (Id. ¶ 11.)  In 2006, upon learning of Plaintiff's

---

[1] In reviewing Plaintiff's motion to dismiss, the Court will accept Plaintiff's factual
allegations as true and will "consider only the allegations in the complaint, exhibits attached to
the complaint, matters of public record, and documents that form the basis of a claim."  Lum v.

successful after-school dance program, Defendant Jill McCollum – a teacher at the

Chambersburg Area School District – contacted Plaintiff to recruit him to establish a chapter of

the "REACH! Program" in association with the school district. (Id. ¶ 34.) Defendant Joseph

Padasak is the Superintendent of the school district. (Id. ¶ 7.) Plaintiff and the school district

formalized their relationship when the board of the school district approved an after-school

REACH! Program in 2006 or 2007. (Id. ¶ 36.) The school district agreed to make Plaintiff the

director of the after-school program, and to allow him to retain ownership of all intellectual

property associated with the program. (Id. ¶¶ 38-39.) Defendant Chambersburg Area School

District Foundation served as the grant recipient for money granted to the school district for the

program, including money granted from the Summit Health Endowment. (Id. ¶ 41.)

       Plaintiff is African American, and despite the fact that the school district never

complained about his performance, Plaintiff alleges that Defendants began treating him "in a

very racial stereo-typical and dismissive manner," including making comments bearing "strong

racial overtones" and tasking Plaintiff with disciplining the African-American and Hispanic

students. (Id. ¶¶ 53, 63, 77.) Moreover, Plaintiff alleges that he was not permitted to view, inter

alia, his time-sheets, performance reports, budgets or expenditure reports, from 2007 through

2011, that he was not compensated in accordance with his contract with the school district, and

that he was not trusted to handle cash. (Id.) Additionally, Plaintiff alleges that the school

district did not accurately report Plaintiff's income to the Internal Revenue Service and left

Plaintiff financially responsible for paying taxes on money he never received as income. (Id. ¶¶

Bank of Am., 361 F.3d 217, 221 n.3 (3d Cir. 2004); see also Phillips v. Cnty. of Allegheny, 515
F.3d 224, 233 (3d Cir. 2008).

65-67.)  Ultimately, Plaintiff alleges that Defendants "abruptly and unjustly terminated [him] and, seemingly, terminated the [REACH!] Program without explanation."  (Id. ¶ 79.)

Plaintiff alleges that in February 2013, the school district reinstated the REACH! Program under a different name, with Plaintiff's former responsibilities being assigned to two individuals with a higher combined hourly rate than Plaintiff was paid.  (Id. ¶ 80.)  Moreover, Plaintiff alleges that Defendants continue to use his intellectual property without authorization, and interfered with his ability to obtain grants.  (Id. ¶¶ 83-138.)

Plaintiff filed a motion for preliminary inunction on April 16, 2013.  (Doc. No. 20.) Defendants filed their motions to dismiss on April 22, 2013.  (Doc. Nos. 25, 27.)

## II.    LEGAL STANDARD

A motion to dismiss filed pursuant to Rule 12(b)(6) tests the legal sufficiency of the complaint.  Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993).  In reviewing a motion to dismiss, a court may "consider only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim."  Lum, 361 F.3d at 221 n.3.  The motion will only be properly granted when, taking all factual allegations and inferences drawn therefrom as true, the moving party is entitled to judgment as a matter of law.  Markowitz v. Ne. Land Co., 906 F.2d 100, 103 (3d Cir. 1990).  The burden is on the moving party to show that no claim has been stated.  Johnsrud v. Carter, 620 F.2d 29, 33 (3d Cir. 1980).  Thus, the moving party must show that Plaintiff has failed to "set forth sufficient information to outline the elements of his claim or to permit inferences to be drawn that those elements exist."  Kost, 1 F.3d at 183 (citations omitted).  A court, however, "need not credit a complaint's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss."  Morse

v. Lower Merion Sch. Dist., 132 F.3d 902, 906, 908 (3d Cir. 1997).  While the 12(b)(6) standard does not require "detailed factual allegations," there must be a "'showing,' rather than a blanket assertion of entitlement to relief. . . . '[F]actual allegations must be enough to raise a right to relief above the speculative level.'"  Phillips, 515 F.3d at 231-32 (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  Put otherwise, a civil complaint must "set out 'sufficient factual matter' to show that the claim is facially plausible."  Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (quoting Ashcroft v. Iqbal, 129 S. Ct. 1937, 1955 (2009)).

## III.    DISCUSSION

In his amended complaint, Plaintiff sets forth twelve separate causes of action against all Defendants: (1) a Fourteenth Amendment equal protection claim (Count One); (2) a Fourteenth Amendment due process claim (Count Two); (3) a First Amendment free speech claim (Count Three); (4) a claim brought pursuant to 42 U.S.C. § 1983 (Count Four); (5) a trademark infringement claim under the Lanham Act (Count Five); (6) a false designation of origin and unfair competition claim under the Lanham Act (Count Six); (7) an unfair competition claim brought pursuant to the Pennsylvania Unfair Trade Practices and Consumer Protection Law (UTPCPL) (Count Seven); (8) a common law trademark infringement claim (Count Eight); (9) a common law contributory trademark infringement claim (Count Nine); (10) a breach of contract claim (Count Ten); (11) a claim for equitable relief (Count Eleven); and (12) a claim for tortious interference with contractual relations (Count Twelve).  (Doc. No. 10.)  The Court will discuss each count in Plaintiff's complaint separately.

### A.    Equal Protection (Count One)

In Count One of his amended complaint, Plaintiff avers that Defendants violated his right

to equal protection of the law, pursuant to the Equal Protection Clause of the Fourteenth Amendment. (Doc. No. 10 ¶¶ 139-160.) Specifically, he asserts that he was subjected to disparate treatment because, unlike similarly situated individuals involved in the after-school program, he was not permitted to review time-sheets maintained by Defendants, review financial documents related to the after-school program, or handle cash. (Id. ¶ 142.) Also, unlike similarly situated individuals, Plaintiff asserts that he was expected to routinely address disciplinary matters involving minority students, and cash checks written to him in order to pay teachers and buy food and supplies. (Id. ¶¶ 142-143.) Plaintiff alleges that the practice of requiring him to pay teachers and buy food and supplies resulted in unfair tax burdens that were not imposed on other after-school program leaders. (Id. ¶ 153.) Plaintiff asserts that Defendants' violation of his civil rights has caused him to suffer irreparable harm, and will continue to cause him further irreparable injury. (Id. ¶ 158.)

Plaintiff appears to bring his equal protection claim pursuant to 42 U.S.C. § 1983. To state a cause of action under Section 1983, a plaintiff must establish that a person acting under color of state law violated a right secured by the Constitution or the laws of the United States. West v. Atkins, 487 U.S. 42, 48 (1988). One such right arises out of the Equal Protection Clause of the Fourteenth Amendment, which provides that "no state shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV § 1. "This is essentially a direction that all persons similarly situated should be treated alike." Shuman ex rel. Shertzer v. Penn Manor Sch. Dist., 422 F.3d 141, 151 (3d Cir. 2005) (citing City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985)). In other words, "when those who appear similarly situated are nevertheless treated differently, the Equal Protection Clause requires at

least a rational reason for the difference, to ensure that all persons subject to legislation or regulation are indeed being 'treated alike, under like circumstances and conditions.'"  Engquist v. Oregon Dep't of Agr., 553 U.S. 591, 602 (2008) (quoting Hayes v. Missouri, 120 U.S. 68, 71-72 (1887)).

To state a claim under this "class of one" theory, a plaintiff must allege that: "(1) defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment."  Hill v. Borough of Kutztown, 455 F.3d 225, 239 (3d Cir. 2006).  There is no requirement "that the different treatment [be] based on [his or her] membership in any particular class."  Engquist, 553 U.S. at 594.  However, the Supreme Court has explained:

> There are some forms of state action . . . , which by their nature involve discretionary decisionmaking based on a vast array of subjective, individualized assessments.  In such cases the rule that people should be "treated alike, under like circumstances and conditions" is not violated when one person is treated differently from others, because treating like individuals differently is an accepted consequence of the discretion granted.  In such situations, allowing a challenge based on the arbitrary singling out of a particular person would undermine the very discretion that such state officials are entrusted to exercise.

Id. at 603.  The employment context is one such situation, where the government is not required to treat all individuals alike.  Id. at 605.  In so holding, the Supreme Court emphasized the "common-sense realization that government offices could not function if every employment decision became a constitutional matter."  Id. at 607 (quoting Connick v. Myers, 461 U.S. 138, 143 (1983)).

While the Supreme Court does not recognize a class-of-one cause of action in the government employment context, a traditional equal protection claim is still available for

6

plaintiffs alleging that they were discriminated against based on their status as a member of a protected class. To state an equal protection claim based on membership in a protected class, the plaintiff must allege: (1) that he or she is a member of a protected class; and (2) that the government treated similarly situated individuals outside of the protected class differently. Terrell v. City of Harrisburg Police Dep't, 549 F. Supp. 2d 671, 687 (M.D. Pa. 2008) (citing Oliveira v. Twp. of Irvington, 41 F. App'x 555, 559 (3d Cir. 2005); Keenan v. City of Phila., 983 F.2d 459, 465 (3d Cir. 1992)). As the Third Circuit put it, "[t]o bring a successful claim under 42 U.S.C. § 1983 for a denial of equal protection, plaintiffs must prove the existence of purposeful discrimination." Keenan, 983 F.2d at 465 (citing Andrews v. Phila., 895 F.2d 1469, 1478 (3d Cir.1990)). In alleging the existence of individuals outside the protected class, a plaintiff "cannot use allegations . . . that amount to nothing more than 'conclusory, boilerplate language' to show that he may be entitled to relief;" instead, the plaintiff must identify individuals outside of his or her protected class who received differential treatment. Young v. New Sewickley Twp., 160 F. App'x 263, 266 (3d Cir. 2006) (citing Evancho v. Fisher, 423 F.3d 347, 354-55 (3d Cir. 2005)).

While Plaintiff references his African-American race throughout his complaint, and generally references racially disparate treatment and "statements bear[ing] strong racial overtones," he never alleges that Defendants treated others outside of his protected class differently. Plaintiff never identifies individuals outside of his protected class who received differential treatment, and his threadbare allegations are insufficient to state a race-based equal protection claim. Furthermore, throughout his complaint Plaintiff asserts that he was the only after-school program leader that was designated as a director, thereby contradicting any assertion

that others were "similarly situated." See Opsatnik v. Norfolk S. Corp., 335 F. App'x 220, 222-23 (3d Cir. 2009) ("[W]hile 'similarly situated' does not mean identically situated, the plaintiff must nevertheless be similar in 'all relevant respects.'") (quoting Holifield v. Reno, 115 F.3d 1555, 1562 (11th Cir. 1997)).  Plaintiff's allegations that he was treated differently than others are insufficient because he does not allege that any of the disparate treatment was due to his race. See Machon v. Pennsylvania Dep't of Pub. Welfare, 847 F. Supp. 2d 734, 749 (E.D. Pa. 2012) ("At best, he offers only a 'thread-bare recitation of the elements' that cannot survive post-Iqbal.").

In essence, Plaintiff's claim amounts to little more than a class-of-one claim under the Equal Protection Clause.  As discussed above, such a claim is not available in the employment context, where public bodies are given discretion with respect to their treatment of employees. "The federal court is not the appropriate forum in which to review the multitude of personnel decisions that are made daily by public agencies."  Bishop v. Wood, 426 U.S. 341, 349 (1976). Moreover, the Court notes that Plaintiff's equal protection claim appears to be time-barred, at least in part, under Pennsylvania's two-year statute of limitations.[2]  Additionally, Plaintiff must

---

[2] Pennsylvania's two-year statute of limitations for personal injuries is applicable to federal civil rights claims brought pursuant to 42 U.S.C. § 1983.  Bougher v. Univ. of Pittsburgh, 882 F.2d 74, 78 (3d Cir.1989).  The statute begins to run at the point when the plaintiff knows or should have known of the injury which is the basis of the action.  Mitchell v. Hendricks, 431 F. Supp. 1295 (E.D. Pa. 1977).  Plaintiff initiated this lawsuit on March 11, 2013.  By his own calculations pursuant to Rule 6 of the Federal Rules of Civil Procedure, any conduct alleged to have occurred on March 9, 2011, or later is timely.  (See Doc. No. 46 at 8.)  While Plaintiff was ultimately terminated from his position in March 2011, the disparate treatment of which he complains, including denial of access to timesheets and financial documents and being charged with disciplining African-American and Hispanic children, all began to occur in 2007, five years before he initiated this lawsuit in 2013.  (See Doc. No. 10 ¶¶ 55, 61, 62, 63, 71, 72, 133.)  While Plaintiff asserts that the continuing violations doctrine applies to his claims, the doctrine is not applicable where the plaintiff is aware of the injury at the time that it occurred.  Seawright v.

allege personal involvement by each Defendant in order to state a claim against them under Section 1983.[3]  Because the Court finds that Plaintiff has failed to state a claim under the Equal Protection Clause, the Court need not address Defendants McCollum and Padasak's argument that they are entitled to qualified immunity.  Thus, the Court will dismiss Plaintiff's equal protection claim for failure to state a claim, without prejudice to Plaintiff's right to amend his complaint to cure the defects noted by the Court.

### B.      Due Process (Count Two)

In Count Two of his amended comlaint, Plaintiff asserts that Defendants violated his rights under the Due Process Clause of the Fourteenth Amendment.  (Doc. No. 10 ¶¶ 161-175.) Plaintiff alleges that Defendants engaged in a policy and "racially disparate practices" of writing checks to him and requiring him to cash the checks to pay teachers and buy supplies and entertainment, requiring Plaintiff to pay taxes on money that he did not retain.  (Id. ¶ 165.) Plaintiff further alleges that no other after-school program leader was terminated without due process, that "racial discriminatory intent is presumed" because Defendants' "racial practices" infringe on fundamental rights, and that Defendants lack a rational or compelling state interest

---

Greenberg, 233 F. App'x 145, 149 (3d Cir. 2007).  Therefore, "causes of action that can be brought individually expire with the applicable statute of limitations period."  O'Connor v. City of Newark, 440 F.3d 125, 128 (3d Cir. 2006).

[3] "A defendant in a civil rights action must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of respondeat superior. Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence."  Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir.1988); see also Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 694 (1978) ("[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents.  Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.").

"for treating Jason Reed as such." (Id. ¶¶ 166-168.)  Therefore, it appears that Plaintiff attempts to state a claim for violation of his rights under the Due Process Clause arising out of his termination, and the school district's practice of paying him by check yet requiring him to pay teachers and buy supplies.

The Due Process Clause of the Fourteenth Amendment is the source of three types of claims that can be brought under Section 1983:

> First, the Clause incorporates many of the specific protections defined in the Bill of Rights.  A plaintiff may bring suit under § 1983 for state officials' violation of his rights to, e.g., freedom of speech or freedom from unreasonable searches and seizures.  Second, the Due Process Clause contains a substantive component that bars certain arbitrary, wrongful government action "regardless of the fairness of the procedures used to implement them." . . .  The Due Process Clause also encompasses a third type of protection, a guarantee of fair procedure.  A § 1983 action may be brought for a violation of procedural due process, but . . . [i]n procedural due process claims, the deprivation by state action of a constitutionally protected interest in "life, liberty, or property" is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest without due process of law.

Zinermon v. Burch, 494 U.S. 113, 125 (1990) (citations omitted).  It is unclear which type of claim Plaintiff is attempting to assert here.  To the extent that Plaintiff is seeking redress under the first category of protection, for violations of his First Amendment rights, the Court will address that claim separately in discussing Plaintiff's First Amendment claim in Count Three.

To the extent that Plaintiff attempts to state a substantive due process claim, he has failed to allege sufficient facts to support such a claim.  "To establish a substantive due process claim, a plaintiff must prove that the particular interest at issue is protected by the substantive due process clause and the government's deprivation of that protected interest shocks the conscience."  Chaney v. Street, 523 F.3d 200, 219 (3d Cir. 2008).  In his due process claim,

Plaintiff complains of the termination of his job, and the allegedly improper tax treatment of his compensation. Plaintiff's frustration with his tax treatment by the school district does give rise to a substantive due process claim. There is no fundamental interest protected by the substantive due process clause in proper income tax withholdings by an employer. Moreover, Plaintiff had no fundamental interest in his employment for the school district. "To have a property interest in a job . . . a person must have more than a unilateral expectation of continued employment; rather, she must have a legitimate entitlement to such continued employment." Elmore v. Cleary, 399 F.3d 279, 282 (3d Cir. 2005) (citing Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 577 (1972)). Pennsylvania is an at-will employment state; thus, not all employees have a property interest in their jobs. Swinehart v. McAndrews, 221 F. Supp. 2d 552, 557 (E.D. Pa. 2002), aff'd, 69 F. App'x 60 (3d Cir. 2003). "The decisional law is clear that an at-will employee does not have a legitimate entitlement to continued employment because he serves solely at the pleasure of his employer." Hill v. Borough of Kutztown, 455 F.3d 225, 234 (3d Cir. 2006). Moreover, Defendants' alleged conduct cannot be said to "shock the conscience." Thus, Plaintiff has failed to state a substantive due process claim.

Next, to the extent that Plaintiff seeks to assert a procedural due process claim, he has failed to allege sufficient facts to support such a claim. To state a procedural due process claim under Section 1983, a plaintiff must allege that: (1) he was deprived of an interest encompassed within the Fourteenth Amendment's protection of life, liberty, and property; and (2) the procedures available to the plaintiff did not provide due process of law. Alvin v. Suzuki, 227 F.3d 107, 116 (3d Cir. 2000). As discussed above, Plaintiff had no property interest in his employment for the school district, and has no protected interest related to his former employer's

tax withholding practices.  Thus, he has failed to state a claim of procedural due process.

Plaintiff's due process claim is vague, and amounts to little more than the thread-bare assertion that "Defendants authorized the execution that violated the rights of Jason Reed."  (See Doc. No. 10 ¶ 163.)  He has failed to allege sufficient facts to support either a procedural or substantive due process claim, and has failed to provide a short and plain statement of the claim, showing that he is entitled to relief, as required by Rule 8 of the Federal Rules of Civil Procedure.  Moreover, as with all of Plaintiff's Section 1983 claims, the two-year statute of limitations bars Plaintiff's recovery for alleged constitutional violations that occurred more than two years before he initiated this action.  Additionally, Plaintiff must allege the personal involvement of each Defendant to state a claim against them under Section 1983.  Because the Court finds that Plaintiff has failed to state a claim under the Due Process Clause, the Court need not address Defendants McCollum and Padasak's argument that they are entitled to qualified immunity.  Therefore, to the extent that Plaintiff seeks to state a procedural or substantive due process claim, the Court will dismiss Count Two without prejudice.  The Court will discuss Plaintiff's due process claim related to the First Amendment with respect to Count Three.

C.      **First Amendment (Count Three)**

In Count Three of his amended complaint, Plaintiff asserts that Defendants violated his right to freedom of speech under the First Amendment.  (Doc. No. 10 ¶¶ 176-192.)  The specific conduct of which Plaintiff complains consists of Defendants' restricting Plaintiff's access to public records, "suppressing the content and viewpoint of [Plaintiff's] response to" Summit Health documents, not entrusting Plaintiff with cash, and not permitting Plaintiff to view his timesheets.  (Id. ¶ 179.)  He asserts that this conduct constitutes "an unconstitutional content-

based and view-based restriction in a designated public forum that does not serve a compelling interest and is not narrowly tailored to achieve that interest." (Id. ¶ 180.) In his brief in opposition to Defendants Chambersburg Area School District, McCollum, and Padasak's motion to dismiss, Plaintiff explained that he is pursuing two separate theories in his First Amendment claim. First, he seeks to enforce his "right to oppose Defendant McCollum's gender-derogatory statements, and to be free from employer retaliation." (Doc. No. 49 at 10.) Second, Plaintiff seeks to protect his "First Amendment right of association, particularly for the exercise of his political belief in government transparency and accountability." (Id.) Plaintiff further explains that the "right of association guarantees against retaliation for non-disruptively inquiring regarding public documents." (Id.) While "it is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss," Car Carriers, Inc. v. Ford Motor Co., 745 F.2d 1101, 1107 (7th Cir. 1984), cert. denied, 470 U.S. 1054, 105 S.Ct. 1758, 84 L.Ed.2d 821 (1984), the Court will nonetheless consider Plaintiff's arguments in order to construe this claim in Plaintiff's complaint.

First, Plaintiff attempts to state a claim for First Amendment retaliation related to his opposition to Defendant McCollum's alleged gender-derogatory statements. According to his amended complaint, "on a particular occasion when Defendant McCollum made disparaging comments regarding Jason Reed . . . certain parents rallied to his defense," leading Defendant McCollum to publicly refer to the parents as "bitch[es]." (Doc. No. 10 ¶ 78.) Plaintiff alleges that at a meeting "days later, a District principal stated that a teacher has the liberty to refer to a parent as the teacher please." (Id. ¶ 78.) Plaintiff does not allege that the principal made this statement to him directly, or that the comment was in response to anything that Plaintiff said.

Plaintiff alleges that "[s]hortly thereafter, Defendants abruptly and unjustly terminated Jason Reed and, seemingly, terminated the Afterschool Program without explanation." (Id. ¶ 79.)

As discussed briefly above, the First Amendment applies to the states pursuant to the Due Process Clause of the Fourteenth Amendment. See Bd. of Educ., Island Trees Union Free School Dist. No. 26 v. Pico, 457 U.S. 853, 855, n. 1 (1982). "In order to plead a retaliation claim under the First Amendment, a plaintiff must allege: (1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action." Thomas v. Independence Twp., 463 F.3d 285, 296 (3d Cir. 2006). The second element is of paramount importance "in determining whether a cognizable First Amendment claim has been stated." Id.

Here, Plaintiff has not alleged constitutionally protected conduct. Plaintiff has alleged that parents "rallied to his defense," and in his brief in opposition he asserts that he has a right to oppose Defendant McCollum's statements. However, in his amended complaint, Plaintiff never alleges that he actually engaged in any constitutionally protected conduct himself. Moreover, while he alleges that he was terminated shortly after Defendant McCollum's statements to parents, he never alleges that he was terminated for opposing her statements. Plaintiff has not alleged sufficient facts to support a finding that there is a causal link between any constitutionally protected conduct and his ultimate termination, and his factual allegations are insufficient to "raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. While temporal proximity is one factor that courts consider in determining whether a Plaintiff has sufficiently alleged a causal link, "the mere fact that adverse employment action occurs after

[a protected activity] will ordinarily be insufficient to satisfy the plaintiff's burden of demonstrating a causal link between the two events." Robinson v. City of Pittsburgh, 120 F.3d 1286, 1302 (3d Cir. 1997), abrogated on other grounds by Burlington No. & Santa Fe. Ry. Co. v. White, 548 U.S. 53 (2006). Because Plaintiff has failed to allege that he engaged in any constitutionally protected conduct, and has failed to establish a causal link between any such conduct and his ultimate termination, the Court finds that he has failed to state a claim for First Amendment retaliation with respect to Defendant McCollum's alleged comments to parents.

Next, Plaintiff seeks to pursue a First Amendment claim related to his "right of association, particularly for the exercise of his political belief in government transparency and accountability," including his right to be free from "retaliation for non-disruptively inquiring regarding public documents." (Doc. No. 49 at 10.) The First Amendment protects two types of associational rights: those founded on intimate human relationships, and those associations formed for the purpose of engaging in First Amendment rights. Rode v. Dellarciprete, 845 F.2d 1195, 1204 (3d Cir. 1988) (citing Roberts v. U.S. Jaycees, 468 U.S. 609, 617-18 (1984)). It is unclear how Plaintiff claims that Defendants restricted his associational rights. Whether the school board had a duty to disclose the documents that Plaintiff seeks under Pennsylvania law is not an issue currently before the Court. Instead, it appears that Plaintiff alleges that Defendants retaliated against him for his political belief in government transparency.

"Employees . . . who claim that adverse employment action was taken against them based upon the exercise of their associational rights must show that they were engaged in constitutionally protected conduct, which conduct was a 'substantial' or 'motivating factor' in the government employer's decision." Id. (citing Mt. Healthy City School District Board of

Education v. Doyle, 274, 287 (1977)).  Here, Plaintiff has not provided a plain and clear statement as to what constitutionally protected associational rights he claims to have been retaliated against for exercising.  Moreover, he has not alleged sufficient facts to support a finding that his exercise of any such rights was a substantial or motivating factor in his ultimate termination.  Plaintiff has simply failed to allege in what way he was denied of his associational rights "for the exercise of his political belief in government transparency and accountability," and has failed to raise his right to relief beyond the speculative level.  Moreover, as with Plaintiff's other Section 1983 claims, the two-year statute of limitations acts as a bar for any alleged constitutional violations that occurred prior to March 2011, and Plaintiff must allege personal involvement against each Defendant in order for them to be liable under Section 1983.  Thus, the Court will deny Plaintiff's First Amendment claim for failure to state a claim.  The Court need not address the issue of qualified immunity, because Plaintiff has failed to allege a constitutional violation.

### D.      42 U.S.C. § 1983 (Count Four)

In Count Four of his amended complaint, Plaintiff asserts a general claim pursuant to 42 U.S.C. § 1983.  (Doc. No. 10 ¶¶ 193-206.)  Rather than alleging an independent cause of action in Count Four, Plaintiff reiterates the allegations of Counts One through Three, stating that Defendants' "Policy and practices as applied violate the Equal Protection Clause and the Due Process Clause of the Fourteenth Amendment, and violate the First Amendment, and violate 42 U.S.C. § 1983 . . . ."  (Id. ¶ 196.)  Section 1983 is not an independent source of substantive rights, but merely "provides a remedy for deprivations of rights established elsewhere in the Constitution or federal laws."  Kopec v. Tate, 361 F.3d 772, 775-76 (3d Cir. 2004).  Therefore,

the Court will dismiss Plaintiff's Section 1983 claim as duplicative of his claims set forth in Counts One through Three.

### E.       Lanham Act Trademark Infringement (Count Five)

In Count Five of his amended complaint, Plaintiff asserts a trademark infringement claim, pursuant to 15 U.S.C. § 1114.  (Doc. No. 10 ¶¶ 207-219.)  Plaintiff alleges that "Defendants' unauthorized use of the REACH! Program and certain Reed Marks, Reed Trade Dress and colorable imitations thereof has created a likelihood of confusion, mistake or deception as to the source, origin, sponsorship, affiliation or approval of Defendants' services." (Id. ¶ 209.)  In the body of his amended complaint, Plaintiff alleges that he is the owner of five federally registered service marks: REACH!, REACHUSA, C-BURG HYPE, LIL' HYPE, and SWAGG, which he refers to as the Reed Marks.  (Id. ¶¶ 25-27.)  The trademark registration certificates that Plaintiff attached to his amended complaint reveal that the United States Patent and Trademark Office (USPTO) registered Plaintiff's service marks on July 17, 2012, over a year after his termination in March 2011.  (See Doc. No. 10-1 at 2-7.)

Plaintiff alleges that, pursuant to his contract with the school district, he retained ownership of all intellectual property associated with the REACH! Program, but that he would license it to Defendants for as long as he worked for the school district.  (Id. ¶¶ 38-39.)  Yet, Plaintiff alleges that after he was terminated, Defendants continued to use his service marks without authorization.  (Id. ¶¶ 92-93.)  Specifically, Plaintiff alleges that Defendants have retained several items of clothing bearing the Reed Marks, and submitted grant applications referring to their after-school program as a "C-BURG HYPE Dance Club."  (Id. ¶¶ 94-98.) Moreover, Plaintiff states generally that Defendants "marketed and used the Reed Marks," and

failed to notify members of the public that Jason Reed was no longer involved with the after-school program despite conducting at least two REACH! performances that he did not authorize. (Id. ¶¶ 103-105.)

To state a claim for federal trademark infringement under 15 U.S.C. § 1114, "a plaintiff must demonstrate that (1) it has a valid and legally protectable mark; (2) it owns the mark; and (3) the defendant's use of the mark to identify goods or services causes a likelihood of confusion." A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc., 237 F.3d 198, 210 (3d Cir. 2000). As to the first two elements, "[r]egistration of a mark under the Lanham Act constitutes prima facie evidence of the mark's validity and its ownership by the registration." Members First Fed. Credit Union v. Members 1st Fed. Credit Union, 54 F. Supp. 2d 393, 403 (M.D. Pa. 1999) (citing 15 U.S.C. § 1115). Regarding the third element, the United States Court of Appeals for the Third Circuit has specified ten factors to be considered in determining whether a defendant's use of its mark to identify goods or services causes a likelihood of confusion:

> (1) The degree of similarity between the owner's mark and the alleged infringing mark; (2) the strength of the owner's mark; (3) the price of the goods and other factors indicative of the care and attention expected of consumers when making a purchase; (4) the length of time the defendant has used the mark without evidence of actual confusion; (5) the intent of the defendant in adopting the mark; (6) the evidence of actual confusion; (7) whether the goods, though not competing, are marketed through the same channels of trade and advertised through the same media; (8) the extent to which the targets of the parties' sales efforts are the same; (9) the relationship of the goods in the minds of consumers because of the similarity of functions; and (10) other facts suggesting that the consuming public might expect the prior owner to manufacture a product in the defendant's market or that he is likely to expand into that market.

Interpace Corp. v. Lapp, Inc., 721 F.2d 460, 462-63 (3d Cir. 1983). Where a defendant once had permission to use the trademark, the Plaintiff must also allege that the defendant's continued use

of the mark was unauthorized.  <u>S & R Corp. v. Jiffy Lube Int'l, Inc.</u>, 968 F.2d 371, 375 (3d Cir. 1992).

Here, Plaintiff has alleged that he registered several service marks, including the C-BURG HYPE mark.  Such registration constitutes <u>prima</u> <u>facie</u> evidence of the mark's validity and Plaintiff's ownership.  Regarding the third element, Plaintiff has alleged that Defendants, as former licensees, continued to use the C-BURG HYPE mark without authorization after he was terminated.  While several of the <u>Lapp</u> factors are inapplicable in this situation, Plaintiff's allegations are sufficient to support a finding that there is a likelihood of confusion where Defendants used his registered mark in association with a dance program that is similar to the program in which Plaintiff used the mark.  Because Plaintiff has alleged that Defendants submitted grant applications in the year 2012 bearing the C-BURG HYPE mark, after Plaintiff was no longer associated with the school district and without his authorization, Plaintiff has alleged sufficient facts to support a Lanham Act trademark infringement claim.

Defendants each argue that Plaintiff has not alleged particularized facts against any of them individually.  (Doc. No. 38 at 10; Doc. No. 39 at 30.)  However, unlike in Section 1983 claims, Plaintiff's reference to Defendants generally is sufficient at the motion to dismiss stage. Whether Plaintiff can actually prove each Defendant's involvement in trademark infringement is an issue for summary judgment, not properly addressed at this stage.  Thus, the Court will not dismiss Plaintiff's claim for trademark infringement under 15 U.S.C. § 1114.

### F.      Lanham Act Unfair Competition (Count Six)

In Count Six of his amended complaint, Plaintiff asserts a claim for false designation of origin and unfair competition under 15 U.S.C. § 1125(a).  (Doc. No. 10 ¶¶ 220-232.)  Claims for

federal trademark infringement under 15 U.S.C. § 1114, and federal unfair competition under 15 U.S.C. § 1125(a)(1)(A), are measured by identical standards.  A & H Sportswear, 237 F.3d at 210.  Thus, the Court will not dismiss Plaintiff's Lanham Act unfair competition claim related to his federally registered trademarks for the same reasons that the Court will not dismiss his trademark infringement claim.

In Count Six, Plaintiff also pursues a claim for trade dress infringement under 15 U.S.C. § 1125(a).  Specifically, Plaintiff alleges that Defendants used the "Reed Trade Dress" in a deceptive way, providing them with an unfair commercial advantage.  (Doc. No. 10 ¶ 223.) Plaintiff's reference to the Reed Trade Dress refers to "the image and overall appearance of a REACH! performance," including "the formation of distinct body shapes, actions, movements, timing, performer spacing and placement, . . . distinct motions involving force, flow, repetition, contrast, transitions, sequencing and performer relationships that must be considered together." (Id. ¶ 29.)

The Lanham Act establishes a cause of action for trade dress infringement.  15 U.S.C. § 1125(a).  Trade dress refers to the total image of a product, business, or service.  See Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 765 n.1 (1992).  "To establish infringement of its unregistered trade dress a plaintiff must prove that (1) the allegedly infringing feature is non-functional, (2) the feature is inherently distinctive or has acquired secondary meaning, and (3) consumers are likely to confuse the source of the plaintiff's product with that of the defendant's product."  Shire US Inc. v. Barr Laboratories, Inc., 329 F.3d 348, 353 (3d Cir. 2003). A plaintiff asserting a trade dress claim bears the burden of proving that the "matter sought to be protected is not functional."  15 U.S.C. § 1125(a)(3).

Here, Plaintiff has not alleged sufficient facts to support a finding that his trade dress is non-functional with respect to dance performances. Instead, Plaintiff has described aspects of dance performances that he developed, which are broad enough to cover any organized dance program. The descriptions are not sufficiently detailed to support a finding that the dance style is inherently distinctive or has acquired secondary meaning. Moreover, Plaintiff has not alleged how Defendants infringed upon his trade dress beyond mere conclusory statements that Defendants "used" the trade dress generally without specifying what aspects of the trade dress Defendants used to support a finding of likely consumer confusion. (See, e.g., Doc. No. 10 ¶ 93.) These allegations are insufficient to support a trade dress claim under 15 U.S.C. § 1125(a). Thus, the Court will dismiss Plaintiff's trade dress claim without prejudice.

### G.    Pennsylvania Unfair Competition (Count Seven)

In Count Seven of his amended complaint, Plaintiff brings a claim for unfair competition under Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 Pa. Stat. §§ 201-1 et seq. (UTPCPL). (Doc. No. 10 ¶¶ 233-244.) In support of his claim, Plaintiff repeats many of the same allegations supporting his trademark infringement claim. Plaintiff alleges that Defendants used his intellectual property without authorization, and that Defendants' use "constitutes unfair methods of competition and deception commercial practices in violation of" the UTPCPL. (Id. ¶ 235.) While the UTPCPL recognizes a private action for a plaintiff who suffers a loss as a result of unfair or deceptive acts, as defined in the statute, such an action is limited to "[a]ny person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property." 73 Pa. Stat. § 201-9.2; see also Keller v. Volkswagen of Am., Inc., 733 A.2d 642, 646 (Pa. 1999).

Because Plaintiff has not alleged that he purchased or leased any goods or services from Defendants for personal, family, or household purposes, the Court will dismiss his claim under the UTPCPL without prejudice for failure to state a claim.

**H.    Common Law Trademark Infringement (Count Eight)**

In Count Eight of his amended complaint, Plaintiff pursues a state-law claim for common law trademark infringement.  (Doc. No. 10 ¶¶ 245-256.)  Because "the elements of common law trademark infringement under Pennsylvania and federal law are identical," the Court need not repeat its discussion of the elements of trademark infringement.  Standard Terry Mills, Inc. v. Shen Mfg. Co., 803 F.2d 778, 780 n.4 (3d Cir. 1986).  Plaintiff has alleged that Defendants used the C-BURG HYPE service mark, which he has registered with the USPTO, without his authorization.  Thus, for the reasons stated above, the Court finds that he has stated sufficient facts to survive a motion to dismiss his trademark infringement claim.

The Court will briefly address Defendant Padasak's argument that he is protected by high public official immunity.  Defendant Padasak argues that all state law claims should be dismissed as against him, because he is a high public official entitled to absolute immunity. (Doc. No. 39 at 14-17.)  This argument is unavailing, because the immunity to which Defendant Padasak refers protects high public officials from actions arising out of false defamatory statements, not common law trademark claims or breach of contract claims.  See Lindner v. Mollan, 677 A.2d 1194, 1195 (Pa. 1996).  Thus, the Court will deny Defendants' motion to dismiss Plaintiff's common law trademark infringement claim.

**I.    Common Law Contributory Trademark Infringement (Count Nine)**

In Count Nine of his amended complaint, Plaintiff pursues a cause of action for common

law contributory trademark infringement. (Doc. No. 10 ¶¶ 257-270.) In support of his claim, Plaintiff alleges that Defendants "induced teenage student instructors of the REACH! Program to instruct dance classes as part of the Afterschool Program or some other program." (Id. ¶ 259.) Plaintiff further alleges that the student instructors instructed dance classes for Defendants under Defendants' control, infringing upon "the REACH! Program and the Reed Trade Dress." (Id. ¶¶ 260-261.) The Reed Trade Dress refers to "the image and overall appearance of a REACH! performance," including "the formation of distinct body shapes, actions, movements, timing, performer spacing and placement, . . . distinct motions involving force, flow, repetition, contrast, transitions, sequencing and performer relationships that must be considered together." (Id. ¶ 29.)

Plaintiff has not made any allegations that the student instructors used his federally registered trademarks; instead, it appears that Plaintiff seeks to pursue a trade dress claim against Defendants for the conduct of the former REACH! Program student instructors. As discussed above, Plaintiff's trade dress is not described in sufficient detail to support a finding that it is non-functional, that it is inherently distinct, or that it has acquired secondary meaning. Additionally, Plaintiff has not alleged in what way Defendants – or the student instructors – used his trade dress to support a finding that the alleged use is likely to confuse consumers. Because Plaintiff has failed to state a claim for trade dress infringement, his contributory liability claim based on student instructors' alleged use of his trade dress must fail as well. Thus, the Court will dismiss Plaintiff's contributory infringement claim.

### J.    Breach of Contract (Count Ten)

In Count Ten of his amended complaint, Plaintiff brings a cause of action for breach of contract. (Doc. No. 10 ¶¶ 271-281.) Plaintiff asserts that Defendants' "unjustified treatment and

termination of Jason Reed constitute breach of contract in violation of 13 Pa. Cons. Stat. §§ 1101 et seq." (Id. ¶ 273.) Plaintiff alleges that his termination was "an unjustified unilateral rescission of the agreement between the Parties," and that he "did not receive notice or advance warning of the termination and thus, was not able to obviate the damages caused by Defendants' breach of contract." (Id. ¶¶ 276, 279.)

In his breach of contract claim, Plaintiff references 17 Pa. Cons. Stat. §§ 1101 et seq., which refers to Pennsylvania's Uniform Commercial Code. The Uniform Commercial Code is a uniform act governing the sale and lease of goods, which has been adopted in Pennsylvania and several other jurisdictions. It does not govern employment or service contracts. Nowhere in his complaint does Plaintiff allege that he entered into a contract for the sale or lease of goods with Defendants. Therefore, his claim under the Uniform Commercial Code must be dismissed.

Instead, it appears that Plaintiff seeks to pursue a common law claim for breach of a services or employment contract. To state a claim for breach of contract, a plaintiff must plead the following elements: (1) the existence of a contract, including its essential terms; (2) a breach of a duty imposed by the contract; and (3) resulting damages. Lackner v. Glosser, 892 A.2d 21, 30 (Pa. Super. Ct. 2006). Here, despite describing some terms of his agreement with the school district, Plaintiff has not alleged that his contract was to last for a certain length of time, or that there was an agreed-upon procedure for termination. The fact that Plaintiff was terminated from a position for which he was hired does not in itself constitute a breach of contract. Plaintiff's allegations are insufficient to support a finding that Defendants breached a duty imposed by their contract with Plaintiff. Moreover, Plaintiff has alleged the existence of a contract between himself and the school district, not Defendants Padasak, McCollum, or the Chambersburg Area

School District Foundation.  Because Plaintiff has failed to allege essential elements of a breach of contract claim, the Court will dismiss the claim without prejudice.

**K.      Equitable Relief (Count Eleven)**

In Count Eleven of his complaint, Plaintiff seeks equitable relief, alleging that Defendants have been unjustly enriched and intentionally diluted his trademarks.  (Doc. No. 10 ¶¶ 282-291.)  Specifically, he alleges that Defendants have "benefitted from their association with the REACH! Program, the Reed Marks, Trade Dress, and Jason Reed's detrimental reliance and efforts to advance the Afterschool Program."  (Id. ¶ 284.)  Plaintiff also alleges that Defendants deliberately diluted his trademarks in violation of 51 Pa. Cons. Stat. § 1124.  (Id. ¶¶ 286, 290.)  Therefore, it appears that Plaintiff attempts to state a claim for unjust enrichment and trademark dilution in Count Eleven.

Under Pennsylvania law, to state a claim for unjust enrichment, Plaintiff must allege that: (1) he conferred a benefit upon Defendants, (2) Defendants appreciated such benefits, and (3) Defendants accepted and retained such benefits under circumstances in which it would be inequitable for defendant to retain the benefit without the payment of value.  Styer v. Hugo, 619 A.2d 347, 350 (Pa. Super. Ct. 1993).

In the body of his amended complaint, Plaintiff alleges that Defendants "used [his] hard work, credentials, notoriety, and REACH! Program as well as the Reed Marks and Trade Dress as the basis for securing approximately $250,000.00 in grant funding for an Afterschool Program that did not exist prior to Jason Reed bringing his REACH! Program to the District."  (Doc. No. 10 ¶ 51.)  However, Plaintiff's amended complaint is devoid of any allegations sufficient to support a finding that the retention and appreciation of such benefit is unjust.  According to his

complaint, Defendants paid him $1,000.00 per month for his services and intellectual property. (Id. ¶ 40.)  Plaintiff must plead more in order to support a finding that the retention of a benefit by Defendants is unjust in this situation, where Plaintiff has alleged that Defendants paid him for the benefit that he conferred upon them.  Moreover "the doctrine of unjust enrichment is inapplicable when the relationship between the parties is founded upon a written or express contract."  Leder v. Shinfeld, 609 F. Supp. 2d 386, 408 (E.D. Pa. 2009).  Because Plaintiff has failed to allege sufficient facts to support a finding that any benefit conferred upon Defendants was "unjust," the Court will dismiss Plaintiff's unjust enrichment claim without prejudice.

Plaintiff also appears to pursue a cause of action for trademark dilution under Pennsylvania law.  For Plaintiff to state a claim for trademark dilution, he must allege that: (1) he is the owner of a famous mark; (2) Defendants are using his mark in commerce; (3) Defendants' use began after the mark became famous; and (4) Defendants' use causes dilution by lessening the capacity of Plaintiff's mark to identity and distinguish goods or services.  Scott Fetzer Co. v. Gehring, 288 F. Supp. 2d 696, 702 (E.D. Pa. 2003) (citing Times Mirror Magazines, Inc. v. Las Vegas Sports News, L.L.C., 212 F.3d 157, 163 (3d Cir. 2000); 15 U.S.C. § 1125(c); 54 Pa. Cons. Stat. § 1124).

> In determining whether a mark is distinctive and famous, a court may consider factors such as, but not limited to:
>
> (1) The degree of inherent or acquired distinctiveness of the mark in this Commonwealth.
>
> (2) The duration and extent of use of the mark in connection with the goods and services with which the mark is used.
>
> (3) The duration and extent of advertising and publicity of the mark in this Commonwealth.

(4) The geographical extent of the trading area in which the mark is used.

(5) The channels of trade for the goods or services with which the mark is used.

(6) The degree of recognition of the mark in the trading areas and channels of trade in this Commonwealth used by the mark's owner and the person against whom the injunction is sought.

(7) The nature and extent of use of the same or similar marks by third parties.

(8) Whether the mark is the subject of a registration in this Commonwealth or a Federal registration . . . .

54 Pa. Cons. Stat. § 1124.

Beyond alleging that his service marks are registered with the USPTO, and the conclusory allegation that the marks "carry extensive goodwill," Plaintiff has not provided sufficient factual allegations to support a finding that his trademarks are distinctive and famous, or that Defendants' use of the marks began after the marks became famous. (See Doc. No. 10 ¶ 30.) Thus, the Court will dismiss Plaintiff's trademark dilution claim without prejudice for failure to allege sufficient facts to support a finding that the marks are distinctive and famous.

## L.    Tortious Interference with Contract (Count Twelve)

In Count Twelve, the final count of his amended complaint, Plaintiff pursues a claim for tortious interference with contract. (Doc. No. 10 ¶¶ 292-297.) In support of his claim, Plaintiff alleges that Defendants' actions interfered with his ability "to fulfill contracts and to secure additional contracts." (Id. ¶ 294.) Specifically, Plaintiff asserts that Defendants interfered with his ability to secure grant funding by refusing to provide him access to Summit Health Grant Reports, and by "pirating REACH! Program instructors." (Id. ¶¶ 134, 138.)

To state a claim for tortious interference with a contract in Pennsylvania, a plaintiff must plead the following four elements: (1) the existence of a contractual relationship, or prospective contractual relationship, between the complainant and a third party; (2) purposeful action by the defendant, specifically intended to harm the existing relationship, or to prevent a prospective relationship from occurring; (3) the absence of privilege or justification on the part of the defendant; and (4) actual legal damage. Pelagatti v. Cohen, 536 A.2d 1337, 1343 (Pa. Super. Ct. 1987). "Essential to the right of recovery on this theory is the existence of a contractual relationship between the plaintiff and a party other than the defendant." Nix v. Temple University, 596 A.2d 1132, 1137 (Pa. Super. Ct. 1991).

Here, Plaintiff has failed to allege the existence of a contract or prospective contract with a third party. Moreover, Plaintiff has not alleged purposeful action by Defendants intending to harm an existing contractual relationship, or to prevent a prospective relationship from occurring. In his briefs in opposition to Defendants' motions to dismiss, Plaintiff asserts that Defendant McCollum made disparaging remarks about him to parents, resulting in the parents choosing not to contract with him. (Doc. No. 46 at 16; Doc. No. 49 at 9.) Not only is it "axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss," Car Carriers, 745 F.2d at 1107, even considering these briefs, Plaintiff has failed to allege sufficient facts to support a finding that Defendants intentionally acted to harm prevent a prospective relationship from occurring. Thus, the Court will dismiss Plaintiff's tortious interference claim without prejudice.

IV.    **CONCLUSION**

Upon consideration of Defendants' motions to dismiss Plaintiff's amended complaint, the

Court will dismiss all of Plaintiff's claims with the exception of his trademark infringement and Lanham Act unfair competition claims. Plaintiff's complaint consists of 297 paragraphs, many of which are repetitive and contain unnecessary commentary. The Court will grant Plaintiff leave to amend his complaint to cure the defects noted herein. Should Plaintiff choose to amend his complaint, he is reminded that Rule 8 requires short and plain statements.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JASON J. REED,** | : | |
| **Plaintiff** | : | **No. 1:13-cv-644** |
| | : | |
| **v.** | : | |
| | : | |
| **CHAMBERSBURG AREA SCHOOL** | : | |
| **DISTRICT, et al.,** | : | **(Chief Judge Kane)** |
| **Defendants** | : | |

## ORDER

**AND NOW**, on this 17th day of June 2013, **IT IS HEREBY ORDERED THAT**
Defendants Chambersburg Area School District, Joseph Padasak, and Jill McCollum's motion to
dismiss (Doc. No. 25) and Defendant Chambersburg Area School District Foundation's motion
to dismiss (Doc. No. 27) are **GRANTED IN PART** and **DENIED IN PART** as follows:

1. Plaintiff's equal protection claim (Count One) is **DISMISSED WITHOUT PREJUDICE**;

2. Plaintiff's due process claim (Count Two) is **DISMISSED WITHOUT PREJUDICE**;

3. Plaintiff first amendment claim (Count Three) is **DISMISSED WITHOUT PREJUDICE**;

4. Plaintiff's Section 1983 claim (Count Four) is **DISMISSED WITHOUT PREJUDICE**;

5. Plaintiff's Lanham Act trademark infringement claim (Count Five) survives Defendants' motions to dismiss;

6. Plaintiff's Lanham Act false designation of origin and unfair competition claim (Count Six) is **DISMISSED IN PART**. The claim survives to extent that Plaintiff seeks to pursue an unfair competition claim under the Lanham Act, 15 U.S.C. § 1125(a)(1)(A), and is **DISMISSED WITHOUT PREJUDICE** to the extent that Plaintiff seeks to pursue a trade dress claim under the Lanham Act.

7. Plaintiff's unfair competition claim under the Pennsylvania UTPCPL (Count

Seven) is **DISMISSED WITHOUT PREJUDICE**.

8.      Plaintiff's common law trademark infringement claim (Count Eight) survives Defendants' motions to dismiss.

9.      Plaintiff's contributory trademark infringement claim (Count Nine) is **DISMISSED WITHOUT PREJUDICE**;

10.      Plaintiff's breach of contract claim (Count Ten) is **DISMISSED WITHOUT PREJUDICE**;

11.      Plaintiff's equitable relief claim (Count Eleven) is **DISMISSED WITHOUT PREJUDICE**; and

12.      Plaintiff's tortious interference claim (Count Twelve) is **DISMISSED WITHOUT PREJUDICE**.

Plaintiff is granted leave to amend his complaint within fifteen days of the date of this order to cure the defects noted herein.

**IT IS FURTHER ORDERED THAT** Plaintiff's motion for an extension of the time in which to file an amended complaint (Doc. No. 52) is **DEEMED MOOT**.


S/ Yvette Kane
Yvette Kane, Chief Judge
United States District Court
Middle District of Pennsylvania