**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JASON J.A. REED,** | : | |
| **Plaintiff** | : | **No. 1:13-cv-00644** |
| | : | |
| **v.** | : | |
| | : | |
| **CHAMBERSBURG AREA SCHOOL** | : | |
| **DISTRICT FOUNDATION,** | : | **(Judge Kane)** |
| **Defendant** | : | |

## <u>MEMORANDUM</u>

Before the Court is Plaintiff Jason Reed's motion for a preliminary injunction (Doc. No. 79) and Defendant Chambersburg Area School District Foundation's motion to dismiss Plaintiff's third amended complaint (Doc. No. 83). For the reasons that follow, the Court will grant in part and deny in part Defendant's motion to dismiss, and will deny Plaintiff's motion for a preliminary injunction.

## I.   BACKGROUND[1]

In 2005, Plaintiff, an African-American male, founded ReachUSA, Inc. ("REACH!"), a non-profit organization through which he created and staged various dance and performance works. (Doc. No. 78 ¶ 3.) In 2006, Plaintiff contracted to establish a REACH! chapter for the Chambersburg Area School District's Afterschool Program. (<u>Id.</u> ¶ 28.) Plaintiff would be paid $75.00 per hour once the Afterschool Program secured annual funding of around $25,000. (<u>Id.</u> ¶ 243.)

Plaintiff alleges that during his employment he was not paid on a regular basis, checks were written to him for payment to Caucasians, he was not allowed to see any of his time sheets,

---

[1] The following background is taken from the allegations of Plaintiff's complaint.

his pay was not properly reported to the IRS, and only he was required to discipline minority students. (Id. ¶ 102.) He also alleges that Jill McCollum, the "Afterschool Program director," directed racially discriminatory and stigmatizing remarks at him. (Id. ¶¶ 66, 140-41, 145.) He further alleges he agreed to a reduced pay of $25 an hour in the 2007-2008 school year after Defendant led him to believe the Afterschool Program had income of less than $25,000. (Id. ¶ 246.) During the following years, he was usually paid "$37.50 per hour or less, depending on the needs of Defendant and District." (Id. ¶ 248.) Around February 2011, he alleges that in retaliation for speaking up about discriminatory race and gender-based discrimination in the program, as well as about sexual solicitation of students by an employee and other issues, Defendant and the District terminated him on March 10, 2011. (Id. ¶¶ 175, 178.)

On July 17, 2012, Plaintiff registered the following five trademarks with the United States Patent and Trademark Office: REACH!, REACHUSA, C-BURG HYPE, LIL' HYPE, and SWAGG. (Id. ¶¶ 16-18.) Plaintiff alleges that Defendant continued to use his trademarks and trade dress without authorization. (Id. ¶¶ 86-88, 213-225.) He further alleges that, in May 2013, Defendant released 3,591 pages of records to the public, and this exposed his social security number. (Id. ¶ 163.) He also alleges that at this time he learned that a "disparagement log" had been created about him, and that the log was "publicly circulated with Defendant's acquiesence." (Id. ¶¶ 166-67.)

On March 11, 2013, Plaintiff filed a complaint against Defendants Chambersburg Area School District Foundation, Chambersburg Area School District, Joseph Padasak, and Jill McCollum. (Doc. No. 1.) He also filed a motion for a preliminary injunction, seeking access to timesheets and Afterschool Program audits, in addition to other injunctive relief. (Doc. No. 5.)

In its memorandum and order filed June 17, 2013, the Court dismissed the majority of Plaintiff's complaint for failure to state a claim, but gave Plaintiff leave to amend his complaint in accordance with the Court's order.  (Doc. No. 53.)  On July 12, 2013, Plaintiff filed a second amended complaint, followed by a second motion for a preliminary injunction on August 6, 2013.  (Doc. Nos. 60, 68.)  Subsequently, Plaintiff signed a written settlement agreement with all Defendants other than the Chambersburg Area School District Foundation, and the Court dismissed those Defendants from the action on September 13, 2013.  (Doc. Nos. 76, 77.)  On September 27, 2013, Plaintiff filed his third amended complaint against the remaining Defendant, the Chambersburg Area School District Foundation.  (Doc. No. 78.)  The following day, Plaintiff filed a new motion for a preliminary injunction, seeking much of the same injunctive relief as the earlier motion, but also moved the Court to grant him additional relief, such as a name-clearing hearing.  (Doc. No. 79.)  On October 15, 2013, Defendant filed a motion to dismiss the third amended complaint.  (Doc. No. 83.)  The motions are fully briefed and ripe for disposition.  Because resolution of Defendant's motion to dismiss affects disposition of Plaintiff's motion for a preliminary injunction, the Court will address the motion to dismiss first.

## II.     MOTION TO DISMISS

### A.     Legal Standard

A motion to dismiss filed pursuant to Rule 12(b)(6) tests the legal sufficiency of the complaint.  Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993).  In reviewing a motion to dismiss, a court may "consider only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim."  Lum v. Bank of Am., 361 F.3d 217, 221 n.3 (3d Cir. 2004).  The motion will only be properly granted when,

taking all factual allegations and inferences drawn therefrom as true, the moving party is entitled to judgment as a matter of law.  Markowitz v. Ne. Land Co., 906 F.2d 100, 103 (3d Cir. 1990). The burden is on the moving party to show that no claim has been stated.  Johnsrud v. Carter, 620 F.2d 29, 33 (3d Cir. 1980).  Thus, the moving party must show that a plaintiff failed to "set forth sufficient information to outline the elements of his claim or to permit inferences to be drawn that those elements exist."   Kost, 1 F.3d at 183 (citations omitted).  A court, however, "need not credit a complaint's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906, 908 (3d Cir. 1997).  Although satisfying the 12(b)(6) standard does not require "detailed factual allegations," there must be a "'showing,' rather than a blanket assertion of entitlement to relief. . . . '[F]actual allegations must be enough to raise a right to relief above the speculative level.'"  Phillips v. Cnty. of Allegheny, 515 F.3d at 231-32 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  Put otherwise, a civil complaint must "set out 'sufficient factual matter' to show that the claim is facially plausible."  Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (quoting Ashcroft v. Iqbal, 129 S. Ct. 1937, 1955 (2009)).

**B.      Respondeat superior**

Defendant's primary argument in support of its motion to dismiss is that Plaintiff's complaint should be dismissed because "[a]ll of the counts of the Third Amended Complaint allege that [Defendant] Foundation is vicariously liable for the actions of McCollum, Padasak and the School District," all of whom have signed a written release agreement with Plaintiff. (Doc. No. 84 at 9.)

Many of Plaintiff's claims are under Pennsylvania law, and under Pennsylvania law,

where there is a written settlement against a principal's agent, that extinguishes liability toward the principal.  See Mamalis v. Atlas Van Lines, Inc., 560 A.2d 1380, 1383 (Pa. 1989).  In response, Plaintiff insists he does not allege that Defendant and the settling parties had an agency relationship.  (Doc. No. 86 at 6-10.)  Although Defendant correctly points to portions of Plaintiff's complaint that do allege that the settled Defendants behaved as Defendant's agents at various times, at least in a limited capacity (See, e.g., Doc. No. 78 ¶ 31), the Court finds that most of Plaintiff's claims against Defendant are not pled on a respondeat superior theory.  Defendant points, for example, to various paragraphs in the complaint where Plaintiff asserts the Defendant acted "in concert" with the District, but in the context of Plaintiff's complaint the Court reads the allegation of activity "in concert" as an allegation against joint tortfeasors rather than an allegation of principal-agent relationship.  (See, e.g., id. ¶¶ 14, 51.)  Moreover, Plaintiff frequently alleges that Defendant is primarily the cause of his harm.  (See, e.g., id. ¶ 87.)  Although Defendant insists that it never employed Plaintiff, never funded a new afterschool dance program and never used Plaintiff's trademarks, Plaintiff alleges otherwise and the Court must accept the facts in the complaint as true.  See Markowitz, 906 F.2d at 103.

## C.    Constitutional claims

In his Third Amended Complaint, Plaintiff brings Equal Protection, Due Process, and First Amendment claims.  As an initial matter, the Court notes that neither Plaintiff nor Defendant asserts that Monell v. N.Y. City Dep't of Soc. Servs., 436 U.S. 658 (1978) is the standard under which the Court must review Plaintiff's constitutional claims.  Monell stands for the proposition that "a municipal corporation be held liable only for constitutional violations resulting from the municipality's official policy."  City of Oklahoma City v. Tuttle, 471 U.S. 808,

822 (1985).  This is because principles of vicarious liability do not apply in the Section 1983

context.  See Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) ("[A] defendant in a

civil rights action must have personal involvement in the alleged wrongs; liability cannot be

predicated solely on the operation of respondeat superior.") (citations omitted).

 The sole remaining Defendant in this action is the Chambersburg Area School District

Foundation, which Plaintiff avers "was established in or about 1990 by board members of the

[District]."  (Doc. No. 78 ¶ 12.)  The Foundation was incorporated in 1994.  (Id.)  Plaintiff

alleges Defendant Foundation is a corporation acting under color of state law.  (Id. ¶ 99, 127-

132.)  That Defendant's agents allegedly violated Section 1983 would not impute liability to

Defendant on normal vicarious liability principles; rather, the Court must assess Plaintiff's

constitutional claims under the Monell framework.  See, e.g., Austin v. Taylor, 604 F. Supp. 2d

685, 690 (D. Del. 2009) (noting that no vicarious liability applied in Section 1983 action against

Defendant corporation that provided medical care to prisoners, and instead applying "policy"

standard consistent with Monell); see also Gilpin v. Kansas State High Sch. Activities Ass'n,

Inc., 377 F. Supp. 1233 (D. Kan. 1973) (holding that a non-profit corporation created to regulate

public school activities acted under color of state law).

 Under Monell, a plaintiff must allege (1) the existence of a municipal custom or policy

and (2) that the municipal employees violated the plaintiff's civil rights while acting pursuant to

this custom or policy.  Monell, 436 U.S. at 694; White v. Brommer, 747 F. Supp. 2d 447, 462-63

(E.D. Pa. 2010).  To establish municipal liability based upon a custom or practice, the plaintiff

must allege that "through its deliberate conduct, the municipality was the 'moving force' behind

the injury alleged."  Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown, 520 U.S. 397, 404 (1997).

A plaintiff must also establish an "affirmative link" or "plausible nexus" between the custom or practice and the alleged constitutional deprivation.  <u>Bielevicz v. Dubinon</u>, 915 F.2d 845, 850-51 (3d Cir. 1990).

A municipality's failure to adequately train its officers, agents and employees also gives rise to a cause of action under Section 1983 if the inadequate training reflects a deliberate indifference to an individual's civil rights and is "closely related to the ultimate injury."  <u>White</u>, 747 F. Supp. 2d at 462-63 (citations omitted).  Generally, deficient training can only amount to the requisite deliberate indifference "where the failure to train has caused a pattern of violations."  <u>Id.</u> at 463 (citing <u>Berg v. Cnty. of Allegheny</u>, 219 F.3d 261, 276 (3d Cir. 2000)).

<u>Monell</u> liability requires an underlying constitutional violation.  <u>See Marable v.West Pottsgrove Twp.</u>, 176 F. App'x 275, 283 (3d Cir. 2006) ("[A] municipality may not incur <u>Monell</u> liability as a result of the actions of its officers when its officers have inflicted no constitutional injury.").  With these principles in mind, the Court will address whether Plaintiff sufficiently alleges an underlying constitutional violation before addressing whether Defendant can be held liable under <u>Monell</u>.

### 1.  Count One: Equal Protection

Plaintiff alleges that Defendant discriminated against him based on his membership in a protected class.  Defendant asks the Court to conclude this claim is time-barred.  (Doc. No. 84 at 9.)  To the extent that Plaintiff alleges the equal protection violation is based on discriminatory treatment other than pay, Defendant is correct.[2]  Plaintiff alleges that the discriminatory

---

[2]  Pennsylvania's two year statute of limitations for personal injuries is applicable to civil rights claims brought pursuant to 42 U.S.C. § 1983.  <u>See</u> <u>Bougher v. Univ. of Pittsburgh</u>, 882 F.2d 74, 78 (3d Cir. 1989).  The statute begins to run at the point when the plaintiff knows or should have known of the injury which is the basis of the action.  <u>Mitchell v. Hendricks</u>, 431 F.

treatment began to occur during his employment and, thus, well before March 9, 2011, and generally Plaintiff's equal protection claim would be barred by the two-year statute of limitations.   However, following the passage of the Lilly Ledbetter Fair Pay Act (FPA), courts now treat each paycheck issued pursuant to a discriminatory pay structure as an independent, actionable employment practice.   Schengrund v. Pennsylvania State Univ., 705 F. Supp. 2d 425, 432 (M.D. Pa. 2009).   This rule applies to Section 1983 actions.   Connelly v. Steel Valley Sch. Dist., No. 11-851, 2011 WL 5024415, at *3 (W.D. Pa. Oct. 20, 2011) aff'd, 706 F.3d 209 (3d Cir. 2013).   Plaintiff avers he received his last paycheck on April 5, 2011, making his claim based on an unequal pay scale timely.   (Id. ¶ 84.)   The Court emphasizes that his claim is only timely to the extent it is based on unequal compensation.   See Noel v. The Boeing Co., 622 F.3d 266, 275 (3rd Cir. 2010) (holding that FPA covers only compensation decisions and not other discrete employment decisions).

In order to state an Equal Protection claim based on membership in a protected class,  a plaintiff must allege: (1) that he or she is a member of a protected class; and, (2) that the government treated similarly situated individuals outside of the protected class differently. Terrell v. City of Harrisburg Police Dep't, 549 F. Supp. 2d 671, 687 (M.D. Pa. 2008) (citations omitted).   As the Third Circuit put it, "[t]o bring a successful claim under 42 U.S.C. § 1983 for a denial of equal protection, plaintiffs must prove the existence of purposeful discrimination."

---

Supp. 1295 (E.D. Pa. 1977).  Plaintiff initiated this lawsuit on March 11, 2013, and both parties agree that any conduct alleged to have occurred on March 9, 2011, or later is timely.  (See Doc. Nos. 46 at 8, 84 at 15.)  Plaintiff again asserts that the continuing violations doctrine applies to his claims, but the doctrine is not applicable where the plaintiff is aware of the injury at the time that it occurred.  Seawright v. Greenberg, 233 F. App'x 145, 149 (3d Cir. 2007).  See O'Connor v. City of Newark, 440 F.3d 125, 128 (3d Cir. 2006) ("[C]auses of action that can be brought individually expire with the applicable statute of limitations period.").

<u>Andrews v. City of Philadelphia</u>, 895 F.2d 1469, 1478 (3d Cir. 1990).  When alleging that individuals outside the protected class were treated differently, a plaintiff  "cannot use allegations . . . that amount to nothing more than 'conclusory, boilerplate language' to show that he may be entitled to relief;" instead, the plaintiff must identify individuals outside of his or her protected class who received differential treatment.  <u>Young v. New Sewickley Twp.</u>, 160 F. App'x 263, 266 (3d Cir. 2006) (citing <u>Evancho v. Fisher</u>, 423 F.3d 347, 354-55 (3d Cir. 2005)).

In his Third Amended Complaint, Plaintiff, an African-American male, asserts that he is similarly situated to "the Caucasian Afterschool program directors, McCollum and Lehman," and to "all other Afterschool Program staff members."  (Doc. No. 78 ¶ 102.)  He avers that of these class members, the School District <u>and</u> Defendant subjected only Plaintiff to the following:

> [N]ot paying him on a regular basis, writing checks to him for payment to Caucasians; not permitting him to see any of his time sheets, inclusive of the time sheets for March 2011 and April 2011; not properly reporting his pay to the IRS; requiring him to discipline African American and Hispanic children; and making racially disparaging remarks to and about [Plaintiff].

(<u>Id.</u>)  Plaintiff also alleges he was "the only Afterschool Staff member not paid for all his work hours and who had to share his pay."  (<u>Id.</u> ¶ 144.)  Plaintiff specifically alleges that "Defendant proposed . . . that only McCollum and Lehman be paid for administrative, performance time and travel hours."  (<u>Id.</u> ¶ 137.)

As established above, these allegations concern discriminatory compensation, and are thus timely.  The Court further finds that Plaintiff's allegations sufficiently state that he is a member of a protected class and that he is similarly situated to McCollum and Lehman (the class of "Afterschool Program directors") and to the "class of nine paid Afterschool Program staff members," are sufficient to state a claim at the motion to dismiss stage.  <u>See</u> <u>Monaco v. Am.</u>

Gen. Assur. Co., 359 F.3d 296, 305 (3d Cir. 2004) (noting that determining whether individuals

are similarly situated "requires a court to undertake a fact-intensive inquiry on a case-by-case

basis").  Defendant argues these individuals are not similarly situated to Plaintiff, but Plaintiff's

amended complaint groups them together as all employed in the Afterschool Program, and he

thus raises a plausible allegation with factual support.[3]  Thus, to the extent Plaintiff's equal

protection claim is based on unequal pay, he adequately alleges an actionable constitutional

violation.  To the extent his equal protection claim is based on disparate treatment other than

unequal pay, Plaintiff fails to state a claim.

### 2.       Count Two: Due Process

Plaintiff also alleges that Defendant violated his substantive and procedural due process

rights.  Specifically, Plaintiff asserts that Defendant violated his procedural due process rights by

stigmatizing him and terminating his employment.[4]  (Id. ¶¶ 140-162.)  He also asserts that

Defendant violated his right to substantive due process by releasing his social security number.

(Id. ¶ 163.)

"To establish a substantive due process claim, a plaintiff must prove that the particular

interest at issue is protected by the substantive due process clause and the government's

deprivation of that protected interest shocks the conscience."  Chainey v. Street, 523 F.3d 200,

219 (3d Cir. 2008).  Regarding his substantive due process claim, it is true that the release of a

_____

[3] Although the Court dismissed Plaintiff's earlier complaint for failure to allege similarly situated individuals, the Third Amended Complaint sets forth more facts and the Court will allow the claim to proceed.  (See Doc. No. 53.)

[4] In Count Two, Plaintiff further reiterates allegations that he was not allowed to view his time sheets and that he had to pay dance instructors out of his own pocket, but the Court finds no support that either of these allegations state a due process claim.

person's social security number may violate a plaintiff's substantive due process right to privacy.
See In re Crawford, 194 F.3d 954, 958 (9th Cir. 1999) ("[T]he indiscriminate public disclosure of [social security numbers], especially when accompanied by names and addresses, may implicate the constitutional right to informational privacy."); Warner v. Twp. of S. Harrison, 885 F. Supp. 2d 725, 741 (D.N.J. 2012) ("A rational factfinder could conclude that Defendants [by disclosing Plaintiff's personal information including social security number] violated the Plaintiff's substantive due process right to privacy."). Plaintiff avers that "Defendant and District acted in concert" to circulate Plaintiff's social security number to the public. (Id. ¶ 148.) Thus, Plaintiff adequately alleges a substantive due process claim.

To state a procedural due process claim under Section 1983, a plaintiff must allege that: (1) he was deprived of an interest encompassed within the Fourteenth Amendment's protection of life, liberty, and property; and (2) the procedures available to the plaintiff did not provide due process of law.[5] Alvin v. Suzuki, 227 F.3d 107, 116 (3d Cir. 2000). Pennsylvania is an at-will employment state; thus, not all employees have a property interest in their jobs. Swinehart v. McAndrews, 221 F. Supp. 2d 552, 557 (E.D. Pa. 2002), aff'd, 69 F. App'x 60 (3d Cir. 2003). Although Plaintiff was an at-will employee, and thus has no property right in employment, a plaintiff can state a procedural due process claim when he shows a stigma to his reputation plus deprivation of some additional right or interest; this is the "stigma-plus" test. See Hill v. Borough of Kutztown, 455 F.3d 225, 234 (3d Cir. 2006). A public employee who is defamed in

---

[5] Defendant also insists the due process claim is not timely, but the Court finds Plaintiff's procedural due process claim is timely based upon the date of his termination. The statute begins to run at the point when the plaintiff knows or should have known of the injury which is the basis of the action. Mitchell v. Hendricks, 431 F. Supp. 1295, 1300 (E.D. Pa. 1977). Plaintiff avers he was terminated on March 10, 2011. As discussed earlier, actions on or after March 9, 2011 are timely in this action.

the course of being terminated or constructively discharged satisfies the "stigma-plus" test even if, as a matter of state law, he lacks a property interest in the job he lost. Hill, 455 F.3d at 238. The stigmatizing statements must be: 1) made publicly and 2) false. Id. "In order to be considered 'in connection with' a termination, an allegedly defamatory statement and the firing must be at least roughly contemporaneous." Orelski v. Bowers, 303 F. App'x 93, 94 (3d Cir. 2008) (citing Brennan v. Hendrigan, 888 F.2d 189, 196 (1st Cir. 1989) (holding two-month delay precluded due process claim)).

Plaintiff alleges that Defendant terminated him, and conclusorily avers that he was stigmatized with "remarks and rumors."  However, not all "rumors" necessarily implicate the constitutional rights of the aggrieved, and they must be pled with specificity.  See Young v. Kisenwether, 902 F. Supp. 2d 548, 558-59 (M.D. Pa. 2012).  On review, the Court finds that Plaintiff does not specifically allege that any stigmatizing rumors were spread in the course of his termination.  In specifically elaborating on any alleged "remarks and rumors," Plaintiff details that in Fall 2010, fellow Afterschool Program employee McCollum said "I pay him enough" and that this "falsely stigmatizes [Plaintiff] as an undeserving African-American." (Doc. No. 78  ¶ 140-141.)  Plaintiff additionally avers that on February 14, 2011, McCollum told children that Plaintiff was "here just because of the money."  (Id. ¶ 70.)  Neither of these allege a sufficiently close nexus for the Court to conclude that Plaintiff's allegations meet the "stigma-plus" test: that Plaintiff was stigmatized in the course of his termination, which Plaintiff alleges occurred on March 10, 2011.  See Ewers v. Bd. of County Comm'rs, 802 F.2d 1242, 1248 (10th Cir. 1986) (holding that three-week delay between stigma and termination precluded due process claim).  Moreover, the Court does not find that the alleged stigmatizing statements, such as

McCollum's statement implying that Plaintiff was motivated primarily by money, or that he was paid enough for his services, actually implicate Plaintiff's liberty interest.  See Brown v. Montgomery Cnty., 470 F. App'x 87, 91 (3d Cir. 2012) (quoting Mercer v. City of Cedar Rapids, 308 F.3d 840, 845–46 (8th Cir. 2002)) ("[N]o liberty interest of constitutional significance is implicated when 'the employer has alleged merely improper or inadequate performance, incompetence, neglect of duty or malfeasance.'"); Winegar v. Des Moines Indep. Cmty. Sch. Dist., 20 F.3d 895, 899 (8th Cir. 1994) ("An employee's liberty interests are implicated where the employer levels accusations at the employee that are so damaging as to make it difficult or impossible for the employee to escape the stigma of those charges.")

He additionally avers that the District's board president made a stigmatizing statement in an April 15, 2013 newspaper article, and that a "disparagement log" against Plaintiff was made and circulated in May 2013 "with Defendant's acquiescence," but these fail to allege a nexus between the "stigma" and the "plus" for the same reason, as they occurred over two years after Plaintiff's firing.  See Sampson v. Sch. Dist. of Lancaster, No. 05-6414, 2009 WL 1675083, at *9 (E.D. Pa. June 12, 2009) ("[The defamatory article] was published over a month after Plaintiff's termination of employment.  Plaintiff's termination and the allegedly false and defamatory newspaper article are not 'roughly contemporaneous.'").  Considering Plaintiff's factual allegations, the Court cannot plausibly infer that Plaintiff was stigmatized "in the course of" or "in connection with" his termination, and Plaintiff has therefore not alleged an actionable claim for violation of procedural due process.

### 3.      First Amendment Retaliation[6]

---

[6] The retaliation claim also appears to be timely.  Although Plaintiff alleges that he made the protected speech in February 2011, Plaintiff asserts that the retaliation began upon his

Plaintiff alleges that Defendant retaliated against him for engaging in protected speech. (Doc. No. 78 ¶¶ 175-78.)  To state a First Amendment retaliation claim, a plaintiff must allege that his activity was protected by the First Amendment and that it was a substantial factor in the alleged retaliation.  Hill v. City of Scranton, 411 F.3d 118, 125 (3d Cir. 2005).  A public employee's statement is protected by the First Amendment when: (1) the employee spoke as a citizen and not in his capacity as an employee, (2) the statement involved a matter of public concern, and (3) the employer did not have "an adequate justification for treating the employee differently from any other member of the general public."  O'Neill v. Phila. Hous. Auth., No. 11-0173, 2011 WL 2559716, at *2 (E.D. Pa. June 29, 2011) (citing Garcetti v. Ceballos, 547 U.S. 410, 417, (2006)).  Thus, the Court must inquire as to whether the "speech was on a matter of public concern and thus constituted protected activity."  Torres v. City of Phila., 907 F. Supp. 2d 681, 686 (E.D. Pa. 2012).  A plaintiff must also show there was a causal connection between his participation in the protected activity and the adverse employment action.  Robinson v. City of Pittsburgh, 120 F.3d 1286, 1299 (3d Cir. 1997).

Plaintiff avers that he:

engaged in protected activity by exercising his right to civilly complain to the District about: sexual solicitation of Afterschool Program boys by an Afterschool Program aid . . . ; gender-derogatory profanity made by McCollum; racially discriminatory remarks made by McCollum to [Plaintiff]; lack of accountability regarding over $100,000.00 in petty cash controlled by McCollum . . . and overall, lack of financial and administrative transparency, accountability and oversight of
the Afterschool Program.

(Doc. No. 78 ¶ 175.)

_____

termination on March 10, 2011.  Thus, March 10, 2011, is when the claim began to accrue.  See Mitchell, 431 F. Supp. at 1300.

A public employee's complaints about personal discrimination are not matters of public concern when the complaint is only about an individual's own abuse and mistreatment, and the conduct was limited in scope and duration.  See Torres, 907 F. Supp. 2d at 686.  Here, Plaintiff's allegations extend beyond personal mistreatment.  Plaintiff alleges that he spoke up regarding financial irregularities and sexual solicitation occurring within the Afterschool Program.  (Id. ¶ 75.)  The Court thus finds that he adequately alleges that he spoke on a matter of public concern.  See also Hill, 455 F.3d at 242-43 (noting that the Court could not determine at the motion to dismiss stage whether the speech involved a matter of public concern because "that determination must be made after an examination of the content, form, and context of the statement, as revealed by the whole record") (internal citations and quotations omitted).

Plaintiff further avers that "District and Defendant attempted to silence" him by "terminating him in retaliation" for his those complaints.  (Doc. No. 78 ¶ 175.)  Plaintiff specifically alleges Defendant terminated him three weeks after he complained, refused to consider him for a position in a new afterschool program, and that Defendant's "employees harass[ed] those who continued to affiliate with him and REACH."  (Id. ¶¶ 178, 190, 194.)  Plaintiff therefore alleges both temporal proximity between the retaliation and the termination, and multiple acts of retaliation, which the Court finds is sufficient to establish a causal connection at this stage.  See Robinson, 120 F.3d at 1302 (noting that temporal proximity is a relevant factor in determining causation, it is usually insufficient absent additional facts).  Because Plaintiff puts forth sufficient facts to support a finding that there is a causal link, his factual allegations are sufficient to "raise a right to relief above the speculative level."

Twombly, 550 U.S. at 555.[7]  The Court thus finds that Plaintiff alleges an actionable First

Amendment retaliation claim.

### 4.   **Monell** claim

Having found that Plaintiff sufficiently alleges Equal Protection, Substantive Due

Process and First Amendment violations, the Court proceeds to analyze whether his allegations

are sufficient to hold Defendant liable under Monell.  As stated earlier, a Monell claim requires a

plaintiff to show that a policy or custom of the municipal corporation, or a lack of adequate

training of municipal employees, was the moving force behind the alleged constitutional

violation.  See Monell, 436 U.S. at 694; White, 747 F. Supp. 2d at 462-63.

Plaintiff's only allegation relating to a lack of training is Plaintiff's averment that, in

relation to the release of his social security number in 2013, "Defendant had a duty to ensure that

procedures were in place and followed in order to ensure that privacy information was

maintained."  (Doc. No. 78 ¶ 164.)  The Court construes this as Plaintiff alleging a lack of

training.  "A municipality's failure to adequately train its officers and employees gives rise to a

cause of action under Section 1983 if the deficient training reflects a deliberate indifference to an

individual's civil rights . . . and is closely related to the ultimate injury.  White, 747 F. Supp. 2d

_____

[7] Plaintiff also alleges that "Defendants' policy of restricting Jason Reed from viewing
Afterschool Program administrative and financial records, including Jason Reed's timesheets is a
frivolous, unconstitutional, content-based and view-based restriction since it does not serve a
compelling interest."  (Id. ¶ 188.)  Although the Court finds no support that this alleges a
violation of the First Amendment, it notes that, to the extent such policy was in place and it
violated Plaintiff's rights, Plaintiff was aware of the practice during his employment prior to
March 9, 2011, and it is thus untimely.  Pennsylvania's two year statute of limitations for
personal injuries is applicable to federal civil rights claims brought pursuant to 42 U.S.C. § 1983.
Bougher v. University of Pittsburgh, 882 F.2d 74, 78 (3d Cir. 1989). The statute begins to run at
the point when the plaintiff knows or should have known of the injury which is the basis of the
action.  Mitchell v. Hendricks, 431 F. Supp. 1295, 1300 (E.D. Pa. 1977).

at 463 (internal citations and quotations omitted).  Failure to adequately train municipal

employees constitutes deliberate indifference "only where the failure has caused a pattern of

violations, and the need for more or different training is obvious and inadequacy is very likely to

result in violation of constitutional rights."  Victory Outreach Ctr. v. Melso, 313 F. Supp. 2d 481,

493 (E.D. Pa. 2004).  Plaintiff points to no other privacy violations showing a pattern indicative

of a failure to train regarding privacy information.  The Court thus finds no basis for a Monell

"lack of training" claim.

Regarding custom or policy, a plaintiff must allege (1) the existence of a municipal

custom or policy and (2) that the municipal employees violated the plaintiff's civil rights while

acting pursuant to this custom or policy."  White, 747 F. Supp. 2d at 462-63.  Put another way, a

plaintiff must allege that "the corporation established and maintained a policy, practice or

custom which directly caused plaintiffs' constitutional harm."  Victory Outreach Ctr., 371 F.

Supp. 2d at 646.  In support of his claim that a policy or custom of Defendant caused his injury,

Plaintiff avers "District and Defendant instituted a Policy and maintains Practices of racially

discriminating against [Plaintiff]."  (Doc. No. 78 ¶ 185.)  He alleges a series of discriminatory

practices by Defendant (inclusive of Defendant's agents, see Doc. No. 78 ¶ 14) from which the

Court concludes, taking his allegations as true, that Defendant had a policy or practice of

discriminating against him.  He alleges Defendant did not pay him on a regular basis and did not

properly report his pay to the IRS.  (Doc. No. 78 ¶ 102.)  He alleges "Defendant proposed . . .

that only McCollum and Lehman be paid for administrative, performance time and travel hours."

(Id. ¶ 137.)  He alleges Defendant terminated him in retaliation for his protected speech.  (Id. ¶

178.)  He alleges Defendant's employees harassed those associating with him after the

termination.  (<u>Id.</u> ¶ 190.)  He also alleges Defendant was involved in releasing his social security

number.  (<u>Id.</u> ¶ 148.)  The Court must accept the allegations as true, and in doing so, it finds

Plaintiff adequately alleges a <u>Monell</u> claim.  <u>See</u> <u>Austin v. Taylor</u>, 604 F. Supp. 2d 685, 690 (D.

Del. 2009) ("Custom . . . can be proven by showing that a given course of conduct, although not

specifically endorsed or authorized by law, is so well-settled and permanent as virtually to

constitute law.").  The Court thus finds that he adequately alleges that Defendant's policy led to

his asserted Equal Protection, Substantive Due Process and First Amendment Retaliation

violations. Thus, the Court will decline to dismiss Plaintiff's <u>Monell</u> claim to the extent it rests

on his Equal Protection, Substantive Due Process and Retaliation claims.[8]

### D.    Count Four: Lanham Act

#### 1.    Trademark Infringenent

In Count Four of his third amended complaint, Plaintiff asserts a trademark infringement

claim, pursuant to 15 U.S.C. § 1114.  (Doc. No. 78 ¶¶ 202-212.)  Plaintiff alleges that he is the

owner of five federally registered service marks: REACH!, REACHUSA, C-BURG HYPE, LIL'

---

[8] Defendant asserts that Plaintiff's allegations are insufficient as he just "adds the word 'Defendant'" to each allegation.  (Doc. No. 84 at 23.)  Plaintiff cites <u>Rode v. Dellarciprete</u>, 845 F.2d 1195, 1207 (3d Cir. 1988) for the proposition that "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of <u>respondeat</u> <u>superior</u> . . . [p]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence.  Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity."  However, <u>Rode</u> refers to articulating the liability of <u>individual</u> supervisory Defendants in civil rights cases.  Here, Plaintiff is accusing a Defendant corporation of civil rights violations, which the Court must analyze under <u>Monell</u>.  The Court does not know if Plaintiff will be able to prove that it was Defendant's policy or practice that caused his harm, but Plaintiff does not need to prove his allegations at the motion to dismiss stage.

HYPE, and SWAGG.  (Id. ¶¶ 16-18.)  Plaintiff registered these service marks with the United

States Patent and Trademark Office on July 17, 2012, over a year after his termination in March

2011.  (See Doc. No. 78-1 at 2-6.)  Plaintiff alleges that Defendant continued to use the marks

and in so doing has "created a likelihood of confusion, mistake or deception as to the source,

origin, sponsorship, affiliation or approval of Defendant's services."  (Id. ¶ 208.)

        To state a claim for federal trademark infringement under 15 U.S.C. § 1114, "a plaintiff

must demonstrate that (1) it has a valid and legally protectable mark; (2) it owns the mark; and

(3) the defendant's use of the mark to identify goods or services causes a likelihood of

confusion."  A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc., 237 F.3d 198, 210 (3d Cir.

2000).  As to the first two elements, "[r]egistration of a mark under the Lanham Act constitutes

prima facie evidence of the mark's validity and its ownership by the registration."  Members

First Fed. Credit Union v. Members 1st Fed. Credit Union, 54 F. Supp. 2d 393, 403 (M.D. Pa.

1999) (citing 15 U.S.C. § 1115).  Regarding the third element, the United States Court of

Appeals for the Third Circuit has specified ten factors to be considered in determining whether a

defendant's use of its mark to identify goods or services causes a likelihood of confusion:

> (1) The degree of similarity between the owner's mark and the
> alleged infringing mark; (2) the strength of the owner's mark; (3) the
> price of the goods and other factors indicative of the care and
> attention expected of consumers when making a purchase; (4) the
> length of time the defendant has used the mark with out evidence of
> actual confusion; (5) the intent of the defendant in adopting the mark;
> (6) the evidence of actual confusion; (7) whether the goods, though
> not competing, are marketed through the same channels of trade and
> advertised through the same media; (8) the extent to which the targets
> of the parties' sales efforts are the same; (9) the relationship of the
> goods in the minds of consumers because of the similarity of
> functions; and (10) other facts suggesting that the consuming public
> might expect the prior owner to manufacture a product in the
> defendant's market or that he is likely to expand into that market.

Interpace Corp. v. Lapp, Inc., 721 F.2d 460, 462-63 (3d Cir. 1983).  When a defendant once had

permission to use the trademark, the plaintiff must also allege that the defendant's continued use

of the mark was unauthorized.  S & R Corp. v. Jiffy Lube Int'l, Inc., 968 F.2d 371, 375 (3d Cir.

1992).

      Here, Plaintiff alleges that he registered several service marks in 2012, and this

registration is prima facie evidence of the mark's validity and Plaintiff's ownership of the mark.

(Doc. No. 78 ¶¶ 16-18.)  Plaintiff also alleges that Defendant continued to use the C-BURG

HYPE and REACH marks without authorization.  Thus, as it did the last time it examined

Plaintiff's trademark infringement claim, the Court finds Plaintiff alleges sufficient facts to

support a trademark infringement claim.

      Defendant argues that the settlement with the other original Defendants cured the ills

cited by Plaintiff, as clothing containing the trademarks have been returned to Plaintiff and the

district must post that such marks are not affiliated with the school district.  (Doc. No. 84 at 25.)

However, Plaintiff has alleged a Lanham Act violation on the face of his complaint, and

Defendant's argument does not address the potential damages related to the earlier alleged

infringement.  Accordingly, the Court will not dismiss Plaintiff's claim for trademark

infringement under 15 U.S.C. § 1114.

### 2.      Trade Dress Infringement

      In Count Four, Plaintiff also pursues a claim for trade dress infringement under 15 U.S.C.

§ 1125(a).  Trade dress refers to the total image of a product, business, or service.  See Two

Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 765 n.1 (1992).  "To establish infringement of its

unregistered trade dress a plaintiff must prove that (1) the allegedly infringing feature is

non-functional, (2) the feature is inherently distinctive or has acquired secondary meaning, and

(3) consumers are likely to confuse the source of the plaintiff's product with that of the

defendant's product." Shire US Inc. v. Barr Labs., Inc., 329 F.3d 348, 353 (3d Cir. 2003).  A

plaintiff asserting a trade dress claim bears the burden of proving that the "matter sought to be

protected is not functional."  15 U.S.C. § 1125(a)(3).

 In its memorandum and order of June 17, 2013, the Court found that Plaintiff's

complaint failed to allege facts or contain sufficient detail to support that Plaintiff's trade dress

was non-functional with respect to dance-performances, or that the trade dress was inherently

distinctive or has acquired secondary meaning.  (Doc. No. 53 at 20-21.)  Thus, the Court

dismissed the claim without prejudice.  (Id.)  Upon review, the Court finds that the description of

Plaintiff's trade dress contained in Plaintiff's third amended complaint is identical to that which

the Court found insufficient in the initial complaint.[9]  Plaintiff's brief in opposition attempts to

describe elements of the trade dress with more specificity (Doc. No. 89 at 20) but a plaintiff may

not amend his complaint in a brief in opposition to a motion to dismiss.  See Car Carriers, Inc. v.

Ford Motor Co., 745 F.2d 1101, 1107 (7th Cir. 1984), cert. denied, 470 U.S. 1054 (1984) ("It is

axiomatic that the complaint may not be amended by the briefs in opposition to a motion to

dismiss.").  As these allegations are insufficient to support a trade dress claim under 15 U.S.C. §

---

[9]  Plaintiff's avers in his third amended complaint that "The Reed Trade Dress, which
includes the image and overall appearance of a REACH! performance, is protectable in that there
are identifiable characteristics connected with the Reed Trade Dress.  Elements of the Reed
Trade Dress include . . . the formation of distinct body shapes, actions, movements, timing,
performer spacing and placement, and includes distinct motions involving force, flow, repetition,
contrast, transitions, sequencing and performer relationships that must be considered together."
(Doc. No. 78 ¶ 20.)  (See Doc. No. 10  ¶ 29.)

1125(a), the Court will dismiss Plaintiff's trade dress claim.

### 3.    Contributory Infringement

In Count Four, Plaintiff also claims "contributory trademark infringement, in violation of 15 U.S.C. § 1125(a)." (Doc. No. 78 ¶¶ 218-225.)  However, in support of this claim, Plaintiff alleges that in 2011, 2012 and 2013, Defendant paid former REACH! Instructors to "teach the Reed Trade Dress" in district classes.  (Id. ¶ 219.)  Plaintiff also alleges the Reed Trade Dress is wrongfully taught elsewhere in programs affiliated with Defendant.  (Id. ¶¶ 218-225.)  Thus, the Court construes this claim as one for contributory trade dress infringement in violation of the Lanham Act.  As the Court noted it its earlier order dismissing Plaintiff's original contributory trade dress infringement claim, "[b]ecause Plaintiff has failed to state a claim for trade dress infringement, his contributory liability claim based on . . . use of his trade dress must fail as well." (See Doc. No. 53 at 23.)  Thus, the Court will dismiss plaintiff's claim for contributory infringement under 15 U.S.C. § 1125(a).

### E.    Count Five: Pennsylvania Unfair Trade Practices and Consumer Protection Law

Plaintiff brings a claim for unfair competition under Pennsylvania's Unfair Trade Practices and Consumer Protection Law (UTPCPL) 73 Pa. Stat. §§ 201-1 et seq.  The UTPCPL provides a cause of action for a plaintiff who suffers a loss as a result of unfair or deceptive acts, as defined in the statute, but the action is limited to "[a]ny person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property." 73 Pa. Stat. § 201-9.2; see also Keller v. Volkswagen of Am., Inc., 733 A.2d 642, 646 (Pa. 1999).  In support of his claim, Plaintiff avers that Defendants deceived him into believing that if he paid an artist to design art depicting Plaintiff's

"C-BURG HYPE" mark, Defendant would place it on clothing and provide them to the children in the Afterschool Program, as "personal merit awards."  (Doc. No. 78 ¶ 235.)

Although Plaintiff argues this was a gift to the children and thus "personal use," alleging that a transaction was for personal purposes is a conclusory allegation that does not survive a motion to dismiss if the pleaded facts do not support the contention.  See, e.g., Morales v. Superior Living Prods., LLC, No. 07-04419, 2009 WL 3234434, at *12-13 (E.D. Pa. Sept. 30, 2009) (dismissing UTPCPL claim in finding that use was not primarily personal, despite Plaintiffs alleging otherwise).

The Court finds that Plaintiff does not adequately allege that the design was purchased for a primarily personal purpose.  Here, the complaint makes clear that the design was of Plaintiff's business mark, and that it was intended for the children he oversaw in his employment and in the course of their participation therein.  (Doc. No. 78 ¶¶ 231-36.)  Although he avers it was to "benefit" the children he oversaw in his professional capacity, it does not necessarily follow that this constitutes personal use.  Moreover, the Court is skeptical that the UTPPCL applies when the alleged fraudulent representation is between an employee and his employer in furtherance of his employment, and where neither party sold or attempted to sell anything to the other.  See Commonwealth v. Monumental Props., Inc., 329 A.2d 812, 816 (Pa. 1974) (noting that the UTPPCL was enacted to "place on more equal terms seller and consumer," to remedy "the unequal bargaining power of opposing forces in the marketplace," to "ensure the fairness of market transactions," and to "equalize the market position and strength of the consumer vis-a-vis the seller").  Thus, the Court will dismiss Count Five.

**F.      Count Six: Breach of Contract**

In Count Six, Plaintiff alleges "breach of contract in violation of the federal Fair Labor Standards Act, the Pennsylvania Wage Payment and Collection Law, 43 Pa.C.S. 260.1, and the Pennsylvania Equal Pay Law[.]"  (Doc. No. 78 ¶ 238.)  The Court construes this as Plaintiff asserting a common law breach of contract claim in addition to claims under those statutes. First, to state a claim for common law breach of contract, a plaintiff must plead the following elements: (1) the existence of a contract, including its essential terms; (2) a breach of a duty imposed by the contract; and (3) resulting damages.  Lackner v. Glosser, 892 A.2d 21, 30 (Pa. Super. Ct. 2006).

Accepting Plaintiff's allegations of a common law breach of contract as true, the Court finds that Plaintiff alleges the existence of a contract between the parties, and a subsequent breach.  Plaintiff avers that Defendant authorized McCollum to act as its agent in entering into a contract with Plaintiff, and that Defendant paid money due Plaintiff under the contract.[10]  (Doc. No. 78 ¶¶ 30-31, 38, 47-48.)  Plaintiff further alleges that Defendant breached the contract by fraudulently leading Plaintiff to believe the Afterschool Program had less than $25,000.00 in income so as to not pay him the full agreed-upon amount.  (Id. ¶¶ 236, 246.)  Plaintiff also avers that Defendant had a duty to retain Plaintiff under the contract until August 2011, but fired him in March 2011.  (Id. ¶ 47.)  This adequately alleges a breach of contract, and the Court will decline to dismiss the claim.

Defendant argues that the statute of limitations bars any breach of contract claim

---

[10]  Although McCollum was allegedly Defendant's agent for purposes of entering into the contract, Plaintiff's complaint on its face alleges Defendant itself breached the contract.  Where a party contracts with a corporation through a corporate agent who acts within the scope of his authority and reveals his principal, the corporate principal alone is liable for breach of the contract."  Daniel Adams Assocs. v. Rimbach Publ'g, Inc., 519 A.2d 997, 1000–01 (Pa. Super. Ct. 1987).

regarding wages for the first few years of Plaintiff's employment, but Plaintiff alleges that he was not <u>aware</u> that the program had income over $25,000 until May 2013, and thus it was in May 2013 that he learned he was owed more money.  (<u>Id.</u> ¶¶ 236, 246.)  Thus, Plaintiff's breach of contract claim is timely.  <u>See</u> <u>Mitchell</u>, 431 F. Supp. at 1300 (noting that the statute of limitations begins to run at the point when the plaintiff knows or should have known of the injury which is the basis of the action).

This also supports Plaintiff's claim under the Pennsylvania Wage Payment and Collection Law (WPC), 43 Pa. Stat. Ann. § 260.1.  Although the WPC "does not create a new right to compensation," it "establishes a right to enforce payment of wages and compensation that the employer has legally obligated itself to pay."  <u>Scully v. US WATS, Inc.</u>, 238 F.3d 497, 516-17 (3d Cir. 2001).  Plaintiff alleges he was not paid in accordance with the agreed upon terms of the contract, which, for the reasons described above, the Court finds timely, and the Court will not dismiss Plaintiff's WPC claim.

Regarding Plaintiff's claim under the Fair Labor Standards Act (FLSA), Plaintiff's complaint does not clearly aver how Defendant violated it, or what provisions were violated, but in his brief he draws the Court's attention to the FLSA's minimum wage requirement, and the requirement that employees be paid a premium for hours worked in excess of forty per week. (Doc. No. 84 at 23-24.)  In his brief, Plaintiff mentions that there were months where Defendant paid him less than minimum wage, and states that he was not compensated for overtime.  (<u>Id.</u>) Neither of these allegations, however, are present in Plaintiff's complaint.  Rather, the complaint alternatively refers to Plaintiff being paid $25 an hour, or "$37.30 per hour or less, depending on the needs of Defendant and District."  (Doc. No. 78 ¶¶ 246, 248.)  The complaint also mentions

Plaintiff not being paid for travel, "administrative time" and "performance time," but Plaintiff does not aver that this time was overtime in excess of 40 hours a week.  (Id. ¶ 241.)  Thus, he does not state a claim under the FLSA.  As for Plaintiff's claim under the Equal Pay Law, the EPL applies to pay discrimination based on gender, which Plaintiff does not allege in his complaint.  See Wildi v. Alle-Kiski Med. Ctr., 659 F. Supp. 2d 640, 657 (W.D. Pa. 2009).  To the extent Plaintiff seeks to state a claim under the FLSA or the EPL, the claim will therefore be dismissed.[11]

### G.   Count Seven: Quantum Meruit

In Count Seven, Plaintiff brings a claim for "equitable relief on the basis of detrimental reliance and quantum meruit to the extent that the breach of contract claim is not established." (Doc. No. 78 ¶ 286.)  Under Pennsylvania law, to state a claim for unjust enrichment/quantum meruit, Plaintiff must allege that: (1) he conferred a benefit upon Defendant, (2) Defendant appreciated such benefits, and (3) Defendant accepted and retained such benefits under circumstances in which it would be inequitable for Defendant to retain the benefit without the payment of value.  Styer v. Hugo, 619 A.2d 347, 350 (Pa. Super. Ct. 1993).

---

[11]  Plaintiff also avers in his complaint that "[a]t minimum under the Lilly Ledbetter Fair Pay Act . . . [Plaintiff] is entitled to recovery for such expense damages from March 9, 2011 to April 5, 2011, the last date Defendant made a direct payment to [Plaintiff]."  (Doc. No. 78 ¶ 240.)  The FPA amended various statutes including Title VII of the Civil Rights Act of 1964. The FPA "applies exclusively to causes of action arising out of the statutes which it amended; it does not provide an independent cause of action."  See Koger v. Allegheny Intermediate Unit, No. 10-1466, 2012 WL 603565, at *6 (W.D. Pa. Feb. 24, 2012) aff'd, 495 F. App'x 266 (3d Cir. 2012). As the FPA does not provide a cause of action, the Court construes Plaintiff's averment as a reference to the FPAs rule, referenced earlier, which makes each paycheck pursuant to a discriminatory pay structure an actionable violation.  See Schengrund v. Pennsylvania State Univ., 705 F. Supp. 2d 425, 432 (M.D. Pa. 2009).  Although the Third Circuit applies this rule to Section 1983 claims, the Court finds no support for the suggestion that it applies to a common law breach of contract claim.

The Court finds that Plaintiff alleges the elements of an unjust enrichment claim. Plaintiff states that he worked for Defendant but that Defendant fraudulently misrepresented the program's total income, and in so doing did not pay Plaintiff money properly owed to him. In other words, he alleges that Defendant received his services, but did not pay in full for them. Because Plaintiff alleges deception, the Court finds the circumstances suggest it would be inequitable to not pay Defendant for services rendered.  It is true, as Defendant contends, that the doctrine of unjust enrichment is "inapplicable when the relationship between parties is founded upon a written agreement or express contract." Leder v. Shinfeld, 609 F. Supp. 2d 386, 408 (E.D. Pa. 2009) (citing Wilson Area Sch. Dist. v. Skepton, 895 A.2d 1250, 1254 (Pa. 2006)). However, the existence of a contractual relationship is disputed, as Defendant contends he was not a party to any contract with the Plaintiff.  Thus, quantum meruit may apply if Plaintiff cannot prove a contract exists, and the Court will not dismiss the claim.  See Lugo v. Farmers Pride, Inc., 967 A.2d 963, 970 (Pa. Super. Ct. 2009) ("[B]reach of contract may be pleaded alternatively with a claim of unjust enrichment, although recovery may not be had for both unjust enrichment and the other claims.").

### H.      Count Eight: Tortious interference with business and economic relationships

In Count Eight, Plaintiff brings a claim for "tortious interference with business and economic relationships."  (Doc. No. 78 ¶ 273.)  To state a claim for tortious interference with a contract, a plaintiff must plead: (1) the existence of a contractual relationship, or prospective contractual relationship, between the complainant and a third party; (2) purposeful action by the defendant, specifically intended to harm the existing relationship, or to prevent a prospective relationship from occurring; (3) the absence of privilege or justification on the part of the

defendant; and (4) actual legal damage.  Pelagatti v. Cohen, 536 A.2d 1337, 1343 (Pa. Super. Ct. 1987).

Plaintiff alleges the prospective contract was between him and local parents, "who chose not to privately contract with Jason Reed," and a prospective contract for a grant from Summit Health.  (Doc. No. 78 ¶ 275-278.)  Although thin, the Court finds he adequately pleads that a potential contractual relationship existed.  See Synthes (U.S.A.) v. Globus Med., Inc., No. 04-1235, 2005 WL 2233441, at *7 (E.D. Pa. Sept. 14, 2005).  However, Plaintiff does not adequately plead the additional elements.  In support, Plaintiff avers that "Defendant knew or should have known that their wrongful acts, knowledge and acquiescence to the pirating of Ms. Rodas would interfere with Jason Reed's business relationships and contracts."  (Doc. No. 78 ¶ 286.)  The Court construes Defendant's "wrongful acts" as reference to "rumors," (see id. ¶ 283) but as discussed earlier, Plaintiff's complaint does not adequately allege exactly what rumors Defendant was responsible for spreading, as the specific allegations involve other settled Defendants, such as McCollum.  Regarding Plaintiff's allegations concerning Ms. Rodas, who previously provided dance instruction for Plaintiff, Plaintiff alleges Rodas now teaches for Defendant and the District.  Plaintiff does not clearly allege how the hiring of Ms. Rodas harms him, however, or that there was no justification to hire a new dance teacher.  (Id. ¶ 285.)  In sum, the Court finds Plaintiff does not adequately allege purposeful action by the Defendant, specifically intended to prevent a prospective contractual relationship from occurring, or the absence of privilege or justification by Defendant.  Thus, the Court will dismiss Count Eight.

## I.     Conclusion

Generally, when a complaint is subject to a Rule 12(b)(6) dismissal, the Court must

permit the plaintiff to amend, unless such amendment would be "inequitable or futile." Grayson

v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002).  When a plaintiff has already once

been granted leave to amend, and has "been given ample time to assemble the first amended

complaint," but has again failed to sufficiently state a claim, a district court need not grant

Plaintiff subsequent leave to amend.  See Klein v. Autek Corp., 147 F. App'x 270, 278 (3d Cir.

2005).  Here, the Court finds that Plaintiff was afforded an adequate opportunity to state all of

his claims.  (See Doc. No. 50.)  Accordingly, the Court will grant Defendant's motion to dismiss

with prejudice Plaintiff's (1) procedural due process Monell claim in Count Two; (2) Lanham

Act trade dress and contributory trade dress infringement claims in Count Four; (3) UTPCPL

claim in Count Five; (4) Equal Pay Law, Fair Labor Standards Act and Lilly Ledbetter Fair Pay

Act claims in Count Six, and (5) tortious interference with prospective contractual relations

claim in Count Eight.  Defendant's motion to dismiss is denied as to all other claims.

## III.   MOTION FOR PRELIMINARY INJUNCTION

### A.     Legal Standard

Plaintiff's motion for a preliminary injunction is governed by Rule 65(a) of the Federal

Rules of Civil Procedure.  An injunction is an "extraordinary remedy" that is never awarded as

of right.  Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 22 (2008).  "A party seeking a

preliminary injunction must satisfy the traditional four-factor test: (1) a likelihood of success on

the merits; (2) he or she will suffer irreparable harm if the injunction is denied; (3) granting relief

will not result in even greater harm to the nonmoving party; and (4) the public interest favors

such relief."  Miller v. Mitchell, 598 F.3d 139, 147 (3d Cir. 2010) (citing Child Evangelism

Fellowship of N.J. Inc. v. Stafford Twp. Sch. Dist., 386 F.3d 514, 524 (3d Cir. 2004)).  A ruling

on a preliminary injunction is committed to the sound discretion of the court.  Spartacus, Inc. v.

Borough of McKees Rocks, 694 F.2d 947, 949 (3d Cir. 1982).

      **B.**     **Discussion**

      Plaintiff moves the Court to: (1) enjoin Defendant from further publications of his

privacy information and order Defendant to provide Plaintiff with five years preventative

protection for Plaintiff's privacy information; (2) order Defendant to accurately account to him

and the Internal Revenue Service for the hours he worked; (3) order Defendant to provide him

with a copy of all after-school program audits or to order Defendant to commission an audit; (4)

enjoin Defendant from publishing disparaging statements about Plaintiff without a fair

opportunity for due process; (5) order Defendant to provide Plaintiff with a public name-clearing

hearing conducted by a neutral party; (6) enjoin Defendant from financing or sponsoring any

program using Plaintiff's intellectual property in which Plaintiff is not actually engaged; (7)

award costs and expenses; and, (8) not require Plaintiff to pay a bond or security.  (Doc. No. 81

at 2-3.)  The Court has organized its discussion as follows: first, the Court will address Plaintiff's

requests related to his reputation, such as the name-clearing hearing; second, the Court will

address Plaintiff request for privacy protection; third, the Court will discuss Plaintiff's

intellectual property claims, and fourth, the Court will discuss Plaintiff's request for an audit of

the Afterschool Program and an accounting of the hours that he has worked.

      **1.**     **Injunction relating to allegedly stigmatizing behavior**

      Plaintiff asks the Court to enjoin Defendants from publishing disparaging statements

about Plaintiff without a fair opportunity for due process, and to order Defendant to provide

Plaintiff with a public name-clearing hearing conducted by a neutral party.  (Doc. No. 79 at 2.)

First, Plaintiff does not establish a likelihood of success on the merits.  Plaintiff may satisfy this burden by demonstrating that there is a "reasonable likelihood that [he] will ultimately win the relief [he] seek[s]."  N. Pa. Legal Servs., Inc. v. Lackawanna Cnty., 513 F. Supp. 678, 681 (M.D. Pa. 1981).  Plaintiff's requested remedies are premised on Plaintiff's allegation that Defendant violated Plaintiff's procedural due process by terminating Plaintiff in conjunction with stigmatizing him.  (See Doc. No. 79 at 9-12.)  Indeed, Plaintiff specifically cites Hill v. Borough of Kutztown, 455 F.3d 225 (3d Cir. 2006), in support of his request for a name-clearing hearing; Hill stands for the proposition that where a public employee is deprived of procedural due process rights by virtue of a "stigma-plus" violation, the employee is entitled to a name-clearing hearing.  Id. at 238-39.  The Court finds, however, that Plaintiff does not sufficiently allege a procedural due process claim, nor does he therefore allege that Defendant's policy or custom was the moving force behind a procedural due process violation.  (See infra pp. 10-13.)  Because failure to demonstrate a likelihood of success on the merits necessarily results in the denial of a preliminary injunction, the Court will deny Plaintiff's request for a name-clearing hearing and to enjoin Defendant from making disparaging statements.  See In re Arthur Treacher's Franchisee Litig., 689 F.2d 1137, 1143 (3d Cir. 1982).

The same reasoning applies to Plaintiff's argument that the "disparagement log" mandates this relief, as it was allegedly circulated in 2013, over two years after Plaintiff's termination, and Plaintiff did not adequately tie it into any of his actionable constitutional claims against Defendant.  See Robb v. City of Phila., 733 F.2d 286, 294 (3d Cir. 1984) ("Stigma to reputation alone, absent some accompanying deprivation of present or future employment, is not a liberty interest protected by the [F]ourteenth [A]mendment.")  Plaintiff has not shown a "clear

showing of irreparable harm" if Defendant is not enjoined from making future disparaging

remarks.  In a motion for a preliminary injunction, the burden is on the movant to show

irreparable injury in the absence of an injunction.  <u>Miller</u>, 5ecf98 F.3d at 147.  To establish his

burden, Plaintiff must make a "clear showing of immediate, irreparable harm."  <u>Cont'l Group,</u>

<u>Inc. v. Amoco Chem. Corp.</u>, 614 F.2d 351, 359 (3d Cir. 1980).  "A finding of no irreparable

harm is itself sufficient to uphold [a] district court's denial of a preliminary injunction as a

proper exercise of discretion."  <u>Com. of Pa. ex rel. Creamer v. U.S. Dep't of Agric.</u>, 469 F.2d

1387, 1388 (3d Cir. 1972).  Although Plaintiff alleges past disparaging remarks, Plaintiff does

not specifically allege future disparaging remarks are imminent and there is no clear factual basis

to conclude that further disparaging remarks are imminent.  Thus, Plaintiff points to only

speculative harm, and speculation does not support the issuance of a preliminary injunction.  <u>See</u>

<u>Cont'l Grp., Inc.</u>, 614 F.2d at 359 ("This Court has held that more than a risk of irreparable harm

must be demonstrated. The requisite for injunctive relief has been characterized as a clear

showing of immediate irreparable injury, or a presently existing actual threat; (an injunction)

may not be used simply to eliminate a possibility of a remote future injury, or a future invasion

of rights, be those rights protected by statute or by the common law.") (internal quotations and

citations omitted); <u>Miller v. Hoffman</u>, No. 97-7987, 1998 WL 150970, at *4 (E.D. Pa. Mar. 26,

1998) ("[E]ven if this Court was to grant plaintiff the requested relief, it would be impossible to

administer because plaintiff is seeking a restraining order against alleged future retaliation. Thus,

he is asking this Court to prevent persons from doing something that is entirely speculative in

nature.").

## 2.    Privacy Information

Plaintiff also asks the Court to enjoin Defendant from further publicizing his privacy information and to order Defendant to provide Plaintiff with five years preventative protection for Plaintiff's privacy information.  (Doc. No. 79.)  The Court found that Plaintiff adequately alleged that a policy or custom of Defendant violated his substantive due process rights by releasing his social security number.  (See *infra* pp. 10-11, 16-18.)

However, there is no colorable factual basis for the Court to conclude there is a risk of immediate irreparable harm in the absence of Plaintiff's requested relief.  Plaintiff's social security number has already been released, and it is not clear what "preventative protection" the Court can afford Plaintiff at this juncture.  Moreover, Plaintiff does not allege that future publication is imminent.  Rather, Plaintiff avers that "immediate action to limit Jason Reed's exposure to privacy information abuse that is substantially likely to occur in the absence of preliminary relief" is necessary, but the burden is on Plaintiff in seeking a preliminary injunction, and he provides no basis to show that an additional injury is, in fact, about to occur.  Absent an allegation that Defendant is about to release Plaintiff's privacy information, any suggestion of harm in the absence of an injunction is purely speculative.  See Acierno v. New Castle Cnty., 40 F.3d 645, 653 (3d Cir. 1994) (citations omitted) (noting that preliminary injunctions apply to a "presently existing actual threat"); Cont'l Grp., Inc., 614 F.2d at 359 ("Injunctions will not be issued merely to allay the fears and apprehensions or to soothe the anxieties of the parties.").  Moreover, "when the preliminary injunction is directed not merely at preserving the status quo but . . . at providing mandatory relief, the burden on the moving party is particularly heavy."  Punnett v. Carter, 621 F.2d 578, 582 (3d Cir. 1980).  Plaintiff does not meet this burden and the Court will deny his request.

33

### 3.      Intellectual Property

Plaintiff further asks the Court to "enjoin Defendant from financing or sponsoring any program using the REACH! Program, Reed Marks, Reed Trade Dress or colorable imitation or distinctive components thereof if [Plaintiff] is not actively engaged, inclusive of the Kids Learning After School Program."  (Doc. No. 81 at 5.)

Regarding Plaintiff's request for relief related to his trade dress claim, he has not shown a likelihood of success on the merits.  The Court finds that Plaintiff's complaint does not allege facts or contain sufficient detail to support Plaintiff's claim that his trade dress was non-functional with respect to dance-performances, or that the trade dress was inherently distinctive or has acquired secondary meaning, and will dismiss the claim.  (See *infra* pp. 21-22.) Therefore, there is no basis for a injunction regarding Plaintiff's trade dress infringement claim.

Regarding Plaintiff's request for relief related <u>trademark</u> infringement claim, the Court finds that Plaintiff has shown a likelihood of success on the merits (<u>see</u> *infra* pp. 19-20), however, Plaintiff presents no basis for the Court to conclude that irreparable harm will occur in the absence of an injunction.  Since the last time the Court addressed this claim (<u>see</u> Doc. Nos. 53, 54), Plaintiff and the original Defendants reached a settlement that required the Defendants to return to Plaintiff all clothing containing his marks, and for the District to post a clarification that Plaintiff's marks are not affiliated with the District, thus remedying any ongoing concerns about confusion related to those marks.  (Doc. No. 83-1 at 4.)  Further, Plaintiff's motion for a preliminary injunction focuses on the trade dress claim and does not clarify what continued risk of harm and confusion over the <u>trademarks</u> still exist following the settlement agreement.  In sum, Plaintiff has not presented a factual basis or elucidated a clear showing of imminent harm

related to his trademarks.  "A finding of no irreparable harm is itself sufficient to uphold [a] district court's denial of a preliminary injunction as a proper exercise of discretion."  Com. of Pa. ex rel. Creamer v. U.S. Dep't of Agric., 469 F.2d 1387, 1388 (3d Cir. 1972).

> **4.     Request for an audit of the Afterschool Program and an accounting of hours worked**

Finally, Plaintiff asks the Court to order Defendant to accurately account to him and the Internal Revenue Service for the hours that he worked for Defendant.  (Doc. 81 at 4-5.)  He also asks the Court to order Defendant to provide him with a copy of all after-school program audits or to order Defendant to commission an audit itself.  (Id.)

At this stage, the Court finds that Plaintiff has not established a likelihood of success on the merits or that he would suffer irreparable harm if the Court denies this relief.  First, Plaintiff's  likelihood of success on the claims related to his access to documents is less than clear.  As discussed above, the burden is on Plaintiff, as the moving party, to demonstrate a likelihood of success on the merits, and Plaintiff may satisfy this burden by demonstrating that there is a "reasonable likelihood that [he] will ultimately win the relief [he] seek[s]."  N. Pa. Legal Servs., Inc. v. Lackawanna Cnty., 513 F. Supp. 678, 681 (M.D. Pa. 1981).  Although Plaintiff brings actionable Monell claims related to Retaliation, Substantive Due Process and Equal Protection, these are not premised on the alleged violations for which he seeks redress through this requested relief: financial irregularities within Defendant and the School District**.**  In addition, to the extent Plaintiff alleges that the inaccurate accounting of hours and access to timesheets is an equal protection violation, that claim is barred by the two-year statute of limitations.  (See infra pp. 7-8.)

Moreover, Plaintiff has not shown that he will suffer irreparable harm if the Court denies

this relief.  Regarding Plaintiff's request for an audit of the Afterschool Program, not only does

Plaintiff not establish precisely how he is irreparably harmed in the absence of the immediate

release of this information, Defendant contends, and the Court agrees, that this is properly a

matter for discovery, during which time Plaintiff can request financial data related to the

Afterschool Program.  See Instant Air Freight Co. v. C.F. Air Freight, Inc., 882 F.2d 797, 801

(3d Cir. 1989) (quoting Sampson v. Murray, 415 U.S. 61, 90 (1964)) ("The possibility that

adequate compensatory or other corrective relief will be available at a later date, in the ordinary

course of litigation, weighs heavily against a claim of irreparable harm.").

> Regarding Plaintiff's IRS concerns, he avers:
>
> (41.) The United States Internal Revenue Service has the right to investigate,
> audit and prosecute any person, at any time, involved in falsified income records.
>
> (42.) Since June of 2013, a date after this cause of action was filed, the
> Pennsylvania Department of Labor and Industry has aggressively pursued
> employers the Department believes may have made underpayments or may have
> underreported employees. Jason Reed seeks a written statement from Defendant
> that Holly Wible and Maria Dorsey, who earned money working for the
> Afterschool Program and were paid from checks made payable to Jason Reed,
> were employees of the Afterschool Program.
>
> (43.) Jason Reed also seeks a written statement from Defendant that the teenage
> dance instructors who earned money for Defendants were employees of
> Defendants so that he is not held liable to the IRS or any other governmental
> authority for the services that benefited [sic] Defendants

(Doc. No. 79 at 12-13).  Although Plaintiff asserts he needs written statements and accounting

for the IRS, he does not aver that he is currently being investigated, or that an investigation is

imminent.  Rather, he merely raises the possibility that the IRS may choose to investigate him at

some imprecise time in the future.  Although the Court is sympathetic to Plaintiff's concerns, this

factual basis is insufficient for the Plaintiff to meet his heavy burden in seeking a preliminary

injunction.  See Cont'l Grp., Inc., 614 F.2d at 359 ("The requisite for injunctive relief has been characterized as a clear showing of immediate irreparable injury, or a presently existing actual threat; (an injunction) may not be used simply to eliminate a possibility of a remote future injury, or a future invasion of rights, be those rights protected by statute or by the common law.") (internal quotations and citations omitted).  See Punnett, 621 F.2d at 582 ("[W]hen the preliminary injunction is directed not merely at preserving the status quo but . . . at providing mandatory relief, the burden on the moving party is particularly heavy.").  The Court will thus deny Plaintiff's request for an audit of the Afterschool Program and an accounting of his hours worked.

  C.  **Conclusion**

  A motion for preliminary injunction may be denied without a hearing if "the movant is proceeding on a legal theory which cannot be sustained" or "the movant has not presented a colorable factual basis to support the claim on the merits or the contention of irreparable harm." Bradley v. Pittsburgh Bd. of Educ., 910 F.2d 1172, 1175–76 (3d Cir. 1990).  The Court finds that Plaintiff has not established both a likelihood of success on the merits or a factual basis presenting imminent irreparable harm regarding any of his requested injunctive relief, and therefore will deny his motion for a preliminary injunction.